Lillian A. Muller et al., Appellees, v. The Equitable
Life Assurance Society of the United States,
Appellant.

Gen. No. 39,141.

Opinion filed February 5, 1938.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for
appellant; FREDERIC BURNHAM, of Chicago, of counsel.

RATNER, MILLER & RATNER, of Chicago, for appellee Lillian A. Muller. CHARLES F. FITZGERALD, of Chicago, for appellee Edith Medberry. NELSON G. WETTLING, of Chicago, for appellees Milton R. Muller and Edith M. Muller; OWEN RALL, of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs as beneficiaries in a policy issued by defendant upon the life of Harry Muller brought suit to recover $30,000 and interest by reason of the accidental death of the insured; upon trial the jury returned a verdict for defendant; on plaintiffs' motion the court set this aside and ordered a new trial; defendant filed in this court a petition asking leave to appeal from this order, which was allowed; additional briefs have been filed and the propriety of the order granting a new trial is now before us.

The sole reason moving the trial court to grant a new trial was apparently a feeling on his part that there had been some misunderstanding between counsel and court in a conference held in chambers where there was a discussion as to the instructions to be given.

The defense was that the insurance policy had lapsed. The defendant had sent to the insured a "lapse notice" suggesting that the insured request a reinstatement of the policy and that if the premium was forwarded with a signed request for reinstatement, the company would reinstate the policy, "provided the evidence of insurability is satisfactory to the Society; otherwise the remittance will be promptly returned." A check accompanied by a request for reinstatement (not signed by the insured) was received by defendant, but subsequently, on learning that the insured had been seriously injured, it issued its

check as a refund of the amount of the check enclosed in the request for reinstatement.

Plaintiffs' counsel took the position in conference in chambers of the trial judge that the provision in the ''lapse notice'' that ''the remittance will be promptly returned'' meant the identical check sent to defendant, and that its check refunding this was not the remittance provided for in this lapse notice. The court indicated disagreement with this. Plaintiffs' counsel then claimed that the meaning of the word ''remittance'' was for the jury to determine. Counsel for defendant opposed this, contending it was for the court to construe the meaning of the writing. The court agreed with this but apparently stated that it would permit plaintiffs' counsel to argue the point to the jury. Defendant's counsel then said he would ask the court to instruct the jury that defendant was not required to return the identical check received by it. Plaintiffs' counsel suggested that defendant's counsel write out the instruction he wanted, ''while we are arguing.'' Defendant's counsel thereupon wrote out in longhand the instruction he wanted and sent it to his office to be typewritten. Plaintiffs' counsel proceeded then to make his opening argument to the jury and argued that by not returning the identical check it had received, defendant had accepted it in payment of the balance of premium due and therefore could not question any statements as to insurability of Muller. There is some dispute as to whether defendant's counsel, when he received the typed instruction, handed a copy to plaintiffs' counsel. The court gave defendant's instruction telling the jury that defendant was not required to send back the identical check received by it.

Plaintiffs on their motion for a new trial argue that defendant's counsel was guilty of misconduct in not handing a copy of the instruction to plaintiffs' counsel.

The evidence as to this is about evenly balanced, but in any event there was no rule at the time this case was tried requiring either counsel to submit its instructions to the other side. Plaintiffs' counsel also assert that the court misled them by saying they might argue the meaning of the word "remittance" to the jury but subsequently instructed the jury contrary to the meaning argued by plaintiffs' counsel. Under section 67 of the Practice Act, Ill. Rev. Stat. 1937, ch. 110, § 191; Jones Ill. Stats. Ann. 104.067, as it is now it is not the duty of the trial judge to inform counsel on either side of the instructions he proposes to give. We can conceive of no circumstances that would prevent a trial judge from giving a proper and necessary instruction to a jury. He was not required to discuss the instructions with counsel before he gave them, and his attitude at the time indicated some uncertainty in his mind although inclined to agree with defendant's contention. A trial judge, even after he has read an instruction to the jury, may change his mind and withdraw it. *Chicago & E. I. R. Co. v. Zapp,* 110 Ill. App. 553, affirmed in 209 Ill. 339. We see no reason why a trial judge should be bound by a more or less informal and indefinite statement made in conference in chambers.

We are of the opinion the reasons stated by the trial judge for granting a new trial are inadequate and should not have prevailed. The court indicated that in his opinion the verdict was right. Under such circumstances a new trial should be granted only for grave errors which, had they not occurred, would have resulted in a different verdict. The trial court should not have set aside a proper verdict because of the unimportant matters of which plaintiffs complained.

Moreover, we are of the opinion that the record shows there was no liability of defendant on the policy involved, and that defendant's motion for a directed verdict in its favor should have been allowed.

There is virtually no dispute as to the facts. The policy sued upon was dated November 16, 1932, and quarterly premiums of $155.40 each were due on the 15th of February, May, August and November in each year, with 31 days grace; it contained a provision that after a lapse for nonpayment of premiums the policy might be reinstated upon payment of all overdue premiums, with interest, and production of evidence of insurability satisfactory to defendant.

The premium falling due November 16, 1933, was not paid, and on or about December 21, 1933, the insured submitted to defendant an application for reinstatement which contained a declaration of his good health, and an application for an extension of time to January 16, 1934, to pay the full premium due November 16, 1933; at the same time the insured gave defendant $62.16, which was 40 per cent of the premium, which was to be retained as compensation for the extension if the balance of the premium due November 16, 1933, was not paid on the extended date, namely, January 16, 1934. Defendant reinstated the policy and granted the extension to January 16, 1934.

January 5, 1934, defendant sent the insured a reminder that January 16, 1934, was the last day for payment of the balance of premium due November 16, 1933, and that no further extension of time for payment of that premium could be granted. January 16th came and passed and the balance of the premium due November 16, 1933, was not paid.

A clerk in the office of the soliciting agent of defendant was instructed to call the insured, Muller, about the policy; the clerk, Boyell, called Muller in regard to the policy which had lapsed, to which Muller replied that he knew this but had no money then, although he might have some later.

January 23, 1934, Muller received from defendant a "lapse notice" reminding him that the premium on the policy had not been paid and that if Muller wished

to have it reinstated he should fill out the form on the reverse side of the lapse notice and forward it with a remittance to cover the amount due to defendant. The notice also said that this insurance would be safeguarded, "provided the evidence of insurability is satisfactory to the Society." January 24th Boyell again telephoned Muller, who said he had no money but expected some by the 27th, to which Boyell replied that if it was sent in it would be handled "in the usual way." January 25th Muller was in Milwaukee and on the evening of that day was seriously injured in an automobile accident.

Muller's secretary, Mrs. Olson, testified that she first heard of this accident at approximately 4 o'clock in the morning of January 26th, although she says she did not then know how seriously Mr. Muller was hurt. Mrs. Olson then signed the application for reinstatement of the policy, which was on the reverse side of the lapse notice; this bore the date January 24th, 1934, and the signature, "H. M. Muller"; Mrs. Olson testified that she signed this name; this request for reinstatement contained the usual certificate that the applicant was in good health, had no illness, had not consulted any physician nor been a patient in any hospital or sanitarium; inclosed was a check signed, "Independent Outdoor Poster Adv. Co., By: Anne Quinn, Secy." dated January 25, 1934, for $94.02. These enclosures were sent by mail to defendant January 26, 1934, in an envelope postmarked at 1 p. m. that day. At the time this declaration of good health was mailed with the check, Mrs. Olson knew that the insured, Muller, was lying injured in the hospital at Waukegan, Illinois.

Defendant mailed its receipt, dated January 27th, stating that it received from Harry Muller $94.02, "Offered for Prem due Nov. 16—1933 Pol. 8905717 Subject to Restoration by Society." The receipt further recites—"Said sum is received only for trans-

mission to the Home Office of the Society in New York for the account of the depositor, and the Society is in no way committed thereby to the acceptance thereof for the purpose offered nor to any action in the premises, and nothing herein or connected with the receipt of said sum shall be held to waive any default in payment of any premium, interest or other sum due, or to extend the time for payment of any premiums, interest or other sum, or in any manner to affect the rights of the Society under any policy or contract of insurance or otherwise. If the said amount be not accepted by the Society for the purpose offered it will be returned to the depositor upon demand.'' The check was deposited in defendant's Chicago bank account and the proceeds were placed in a ''Suspense Account.''

The application for reinstatement, with the health certificate, was forwarded to the New York office of defendant, arriving there January 29, 1934. The insured, Harry Muller, died the following day, January 30, as a result of injuries received by him on January 25th.

Defendant first learned of the insured's death through a telegram sent on the day of his death by Mrs. Olson from Waukegan, Illinois, to defendant's offices in New York, requesting that forms for proof of death be forwarded; a letter to the same effect was received the following day, January 31. To this, defendant's New York office replied, after having had word from its Chicago office, that proofs of death would not be issued as the policy had lapsed at the time of insured's death. It is not claimed that defendant knew, until the death of the insured, that the declaration of good health bearing insured's signature was not signed by the insured and was not a true representation as to the insured's condition.

February 8, 1934, defendant sent its check to the order of Harry M. Muller for $94.02 as a refund of the

amount inclosed with the application for restoration and certificate of good health mailed January 26, 1934. This check was returned by the attorneys who had been employed to represent the beneficiaries.

This recital conclusively shows that the policy had lapsed prior to the death of the insured. Muller admitted that it had lapsed in his application for reinstatement dated December 21, 1933, and admitted to defendant's agent that he knew it had lapsed. Moreover, plaintiffs' given instructions Nos. 20 and 23 were predicated upon the assumption, as a fact, that the policy sued on lapsed January 16, 1934.

Plaintiffs argue earnestly that defendant by its acts and conduct waived this lapse and is now estopped to assert it. Before there can be a waiver of a right there must be full knowledge of the facts by the person against whom the waiver is sought and some act clearly indicating the intention to relinquish the right. *Seaback v. Metropolitan Life Ins. Co.*, 274 Ill. 516, 521. Plaintiffs argue that prior to January 16, 1934, by its course of conduct, defendant led Muller to believe that it would not insist upon prompt payment, due January 16, 1934. Without narrating the evidence in detail, we are of the opinion it fails to support plaintiffs' contention. In any event, because defendant was lenient at times with insured, it does not follow that it could not at any time withdraw any privileges and insist upon compliance with the reinstatement provisions of the policy. *Thompson v. Knickerbocker Life Ins. Co.*, 104 U. S. 252, is in point. There was abundant evidence that defendant notified the insured and that the insured knew that if the balance of the premium was not paid on January 16, 1934, the policy lapsed on that date. We do not consider the telephone messages by the clerk Boyell, suggesting that Muller reinstate the policy, as of any probative effect to the contrary.

Other points are made by plaintiffs, which we have examined but do not consider decisive. Upon the un-

disputed evidence the trial court could properly have held that the policy lapsed on January 16, 1934, and had not been reinstated at the time of the insured's death, and that there was no conduct by defendant amounting to a waiver of the lapse of the policy.

In a case involving similar circumstances we held that no recovery by plaintiff could be had. *Newton v. Metropolitan Life Ins. Co.,* 286 Ill. App. 616 (Abst.). We quoted from *Miller v. Metropolitan Life Ins. Co.,* 286 N. Y. S. 126, where an action was brought upon a policy for double indemnity, based on the theory that an expired policy had been reinstated, and the court said: "The documentary evidence disclosed that the payment was made in connection with an application for reinstatement, signed by the deceased, which expressly provided that the policy was not to be deemed reinstated until the application had been favorably acted upon by the home office, and there was no proof of such favorable action." It was there held that a summary judgment should have been entered in favor of the insurance company. That language fits this case, except that here the application for reinstatement was not signed by the insured. The trial judge should have directed a verdict for defendant.

For the reasons indicated we hold that the order vacating the verdict and granting a new trial was erroneous. It is therefore reversed and the cause is remanded with direction to enter a judgment upon the verdict.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and MATCHETT, J., concur.