Raymond Rzeszewski, Minor, by Natalie Rzeszewski et al., Appellants, v. Paul M. Barth, Appellee.

Gen. No. 42,961.

Opinion filed December 13, 1944. Released for publication January 4, 1945.

IRVING G. ZAZOVE, of Chicago, for appellants.

ECKERT & PETERSON of Chicago, for appellee; A. R. PETERSON and OWEN RALL, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Raymond Rzeszewski, a minor, by Natalie Rzeszewski, his mother and next friend, and Frank Rzeszewski, filed their complaint of two counts in the circuit court of Cook county against Paul M. Barth. The first count, in behalf of Raymond Rzeszewski, alleged that on September 19, 1941, he was driving his father's Buick automobile in a westerly direction on 127th street in Worth, Illinois, near the intersection of Ridgeland avenue; that he was in the exercise of due care; that defendant was driving eastwardly along 127th street; that defendant was negligent in operating his automobile at a high and dangerous rate of speed, failing to keep his automobile under proper control, failing to keep a proper lookout, failing to have his car equipped with brakes adequate to stop and control the automobile, and in operating it on the wrong side of the highway. He alleged personal injuries resulting directly and proximately from the negligence charged and asked damages in the sum of $25,000. In the second count Frank Rzeszewski, the father, alleged the same acts of negligence; also, that he was the owner of the automobile; that it was destroyed and that he was deprived of its use. He asked damages of $2,000. Answering, defendant denied that plaintiffs were in the exercise of due care; denied negligence on his part; averred specific acts of contributory negligence and that any damages suffered by plaintiffs were not due to any fault or negligence on his part. At the close of all the evidence, plaintiffs' motion for a directed verdict was overruled. The jury returned a verdict of not guilty. Motions by plaintiffs for a judgment notwithstanding the verdict and in

the alternative, for a new trial, were denied. Judgment was entered on the verdict and plaintiffs appeal. For convenience we will refer to Raymond Rzeszewski as the plaintiff.

Plaintiff became 19 years of age on August 17, 1941. He lived at 5704 South Western avenue, Chicago, and was a high school student. On Friday, September 19, 1941, he was driving his father's Buick automobile in a westerly direction on 127th street. Riding with him was a girl friend, Jessie Plucinski, 18 years of age. They were out for a ride. The car turned into 127th street from Western avenue. The car was in good mechanical condition. One Hundred Twenty Seventh street runs in an easterly and westerly direction. The street is a two-lane country concrete highway, running through farm land. The collision occurred on 127th street, a short distance east of Ridgeland avenue, in Worth, Cook county, Illinois. The scene of the occurrence was west of Central avenue, which according to the numbering system, is 5600 west, and east of Ridgeland avenue, which is 5800 west. South of the pavement at the place where the collision took place, according to the testimony favorable to plaintiff, there was an 18-foot grass shoulder, and south of the shoulder there was a ditch, the ditch being 5 feet north of a farm fence. The depth of the ditch is not stated, but one of plaintiff's witnesses, a farmer who lived in the neighborhood, testified that a vehicle cannot drive over the ditch. A driveway extended from the pavement of the eastbound lane south to a farm house. As part of this driveway, there was a culvert for the passage of water through the ditch. The collision occurred approximately 40 feet east of the driveway. There is another farm driveway, with a culvert, also on the south side of the highway, 125 to 200 feet east of the driveway first described. When about 5 miles west of Western avenue there was a car in front of plaintiff and one behind him. The three cars were

moving in a westerly direction. The car in front remained about a half block ahead of him. He had followed this car, which was owned and being driven by Edward C. Maroney, all the way from Western avenue. He first noticed the car back of him through his rear vision mirror two or three blocks before the collision. This car was being driven by Roman Narvid. Narvid accelerated the speed of his car by moving to the left, or into the lane for eastbound traffic. He then drove his car into the westbound lane in front of plaintiff's car and behind Maroney's car. The Narvid car remained there only a brief period of time, when it again moved to the left into the eastbound lane to pass Maroney's car. At this time Paul M. Barth, the defendant, was driving his 1937 four door Dodge sedan in an easterly direction on 127th street. This car was in good mechanical condition. He was returning from the Oak Hills Golf Club, located at 131st street and 80th avenue, Orland Park, where he had played golf. There was evidence that defendant's car was being driven at a speed of 30 to 35 miles an hour in the eastbound lane. Witnesses for defendant did not see anything unusual about the operation of his car. Mr. Maroney testified that "all of a sudden a car pulled out from behind me and just about the time their rear wheels got even with my front wheels this other car [defendant's] was practically on top of us," that defendant "had to pull off the road in order to keep from hitting the other car," and that the car which went off the road evidently lost control. The first thing Mr. Maroney noticed was the Narvid car "that pulled over behind me and it practically got even with me and I noticed the other car coming, and I felt that the three of us couldn't pass on a two lane road." He also testified that the car which passed him (the Narvid car) was distinguished from the other cars which passed him on the same evening because it "shot out real quick"; and that "it was just like you accelerate your car, probably gave

her the gas and shot around." There was testimony that the Narvid car was traveling at least 35 or 40 miles an hour; that at the time it got even with the Maroney car, Mr. Maroney saw defendant's car coming, and that when the rear wheels of the Narvid car got about even with the front wheels of Maroney's car, Narvid and Barth "were practically going together" and that Barth's car "had to turn clear off the road." When defendant's car went off the road it was moving at approximately the same rate of speed as before it was forced off the road. The speed of his car was reduced about 5 miles an hour as he got back on the highway. Mr. Maroney testified that defendant seemed to lose control of his car and he heard the crash in a fraction of a minute; and that it all happened in a few seconds. Mr. Maroney saw defendant's car, from his rear vision mirror, come back onto the pavement and estimated that defendant's car went a total of 75 to 100 feet after passing his (the Maroney) car. A witness who examined the tire marks shortly after the occurrence, testified that defendant traveled 35 or 40 feet on the pavement in a generally northeasterly direction. Defendant's car was completely off the road. He testified that when his car got back on the pavement it was going 30 miles an hour. The left front of defendant's car came in contact with the left front of plaintiff's car. The impact took place in the westbound traffic lane. Defendant testified that part of his car was over the line "on the wrong side of the highway"; that it all happened so quickly he did not know how fast he was traveling at the time of the impact, but that he would imagine it was 30 miles an hour; that it happened so quickly that he did not know how far south of the pavement he was before he turned back to the left; that he attempted to get back on the highway; that it all happened so quickly that he imagined he looked to see if there was any traffic coming, but that he couldn't say, but that he did not see any

traffic coming along at the time he immediately pulled back on the highway; that he does not remember whether he applied his brakes; and that he intended to turn on his own side of the road, but that he evidently lost control of the car. He denied that the reason he could not stay on his side of the road was that he was going too fast and stated that he did not believe that speed contributed in the slightest to the collision.

It was dark at the time of the collision. The driving lights of the 4 cars were burning. Mr. Maroney further testified that the incident he described, defendant's car leaving the pavement, coming back on and striking plaintiff's car, "all happened in about two or three seconds." Plaintiff and Miss Plucinski were seriously and permanently injured. The Buick car was a total wreck. The left front end of defendant's car was badly smashed, showing the violent physical force with which the cars came together. Maroney brought his car almost to a stop. Through his rear view mirror he saw people coming to take care of the occupants of the cars which had collided, and he followed the car that passed him (Narvid's car). This car pulled into a "place that sells red hots," about two blocks west of Ridgeland avenue. When the Narvid car arrived there, Narvid turned off the lights and he and his companion sat in the car. Maroney parked his car behind the Narvid car so as to prevent the occupants from moving their car and called the State police station. Two policemen responded in about 20 minutes. Maroney testified that he "turned them over" and that he had "nothing further to do with it." Plaintiffs state that defendant testified that he saw "the lights of the first car," perhaps half a block away; that he saw the Narvid car a half block away; and that at that distance the defendant saw the lights of the Narvid car in his, defendant's, lane. Defendant challenges this statement. We agree with defendant that there is no evidence in the record that it was Narvid's car that de-

fendant saw a half block away. We agree that there is no justification in the claim that defendant admitted either that he saw the Narvid car half a block away, or that the car was then in defendant's lane. Plaintiff and Miss Plucinski testified that as the defendant approached the Maroney car, he, defendant, was going very fast, from 60 to 70 miles an hour; that coming east toward Maroney and after passing him, defendant's car was "zigzagging" or "zigging" and "zagging," first off the pavement and then on, sometimes over on a portion of the westbound lane, from 5 to 10 times; that after passing Maroney's westbound car, when Narvid had entirely left the scene—5 or 10 minutes after Narvid left, according to Miss Plucinski, or when Narvid was a good block west of Maroney, according to plaintiff—defendant continued to zigzag and then went off the pavement on the south side of the highway still going 60 to 70 miles an hour and then came back on the pavement and straight for plaintiff's car, striking it on the wrong side of the road. Plaintiff argues that defendant did not deny the testimony about zigzagging. Defendant answers that in view of Mr. Maroney's testimony and the further fact that plaintiff and Miss Plucinski were thoroughly impeached on the record, no denial of such "fantastic testimony" was required. Mr. Maroney was a disinterested witness. His testimony from reading the transcript, sounds convincing, and it is apparent that the jury believed him. There was strong impeaching evidence as to the testimony of plaintiff and Miss Plucinski. It is obvious that on the issue presented the jury rejected their testimony. Mr. Maroney's conduct was commendable. After observing that the victims of the collision were receiving care, he followed the Narvid car and detained him until the State police arrived. At that time Mr. Maroney did not know who was involved in the collision. Plaintiff contends that after defendant was forced off the pavement by Narvid, de-

fendant was negligent in coming back across the pavement and in colliding with plaintiff's car. This was a matter based on controverted evidence to be decided by the jury. The jury decided the proposition against plaintiff. The testimony of plaintiff and Miss Plucinski was obviously designed to prove or at least to imply that the defendant had been drinking. Plaintiff's counsel questioned defendant at the outset of the case about the sale of drinks at the golf club where he had been playing that afternoon, and questioned him closely as to whether he had anything to drink. We agree with defendant that the evidence in this case is overwhelming that he had not been drinking.

Defendant introduced a photograph of the scene of the accident looking east, the direction in which defendant was proceeding. The photograph was taken in March 1943. It shows the open nature of the country. Defendant asserts that the photograph refutes the testimony of one of plaintiff's witnesses that the shoulder on the south side of the pavement was 18 feet wide and that it corroborates the testimony of the same witness that the ditch could not be crossed by a car. Defendant states that the photograph shows that the width of the shoulder available for travel, by comparison with the two-lane pavement, to be only a matter of inches wider than the width of an automobile; that it shows the shoulder sloped into the ditch to the south about a foot or two from the right wheel track made by a car traveling on the shoulder; and that in looking at the picture, the first driveway, with its culverts, is the point at which defendant turned back onto the highway after having been forced off by Narvid. Plaintiff contends that defendant had a shoulder on which to drive of 18 feet wide south of the pavement. Defendant replies that the jury looked at the photograph and evidently came to the conclusion that defendant did not have an 18-foot shoulder to drive on. Defendant points out that the shoulder was

only a matter of inches wider than the width of defendant's car, with dangerous culverts ahead bridging a treacherous ditch alongside the shoulder and "separated from the narrow shoulder only by a rapidly descending slope." Plaintiff argues that the photograph corroborates his witness and charges that defendant is "attempting to mislead the court as he did the jury with a very crude piece of trick photography." Plaintiff is not in a good position to make this charge. The record shows that the attorney for the defendant stated that he had a conversation with the attorney for plaintiff, wherein he inquired as to whether it would be necessary to bring in the photographer who took the picture, and that the attorney for defendant answered that it would not. The attorney for defendant then offered the picture. The attorney for plaintiff said: "I object," but did not give the basis of his objection. The photograph was then received in evidence. Plaintiff could have insisted on the presence of the photographer and could then have cross-examined him as to the manner in which the photograph was taken. He could also have submitted a photograph or photographs taken by a photographer in whom he had confidence.

We turn to a consideration of the contention of plaintiff that the judgment is against the manifest weight of the evidence. Defendant insists that the judgment is not against the manifest weight of the evidence. In argument to the jury and in this court defendant concedes that plaintiff was in the exercise of due care. The theory on which defendant tried the case was that the collision occurred solely through the recklessness and negligence of Roman Narvid, who forced defendant off the pavement in passing the Maroney car suddenly and without warning, and that it was a question for the jury whether under the facts proved, defendant was guilty of any negligence. Persons who have to act in a sudden emergency are not to be judged in the light of after events, but are to be judged, under all

the circumstances of the case, by the standard of what a prudent person would have been likely to do under similar circumstances. *Barnes v. Danville St. R. & Light Co.,* 235 Ill. 566. The jury was required to determine whether defendant and Maroney were to be believed in their version of the occurrence and whether, accepting such version, defendant exercised due care. Where a person must act in an emergency it is for the jury to say whether he acted with that care and foresight which a reasonably careful and prudent driver would use in like circumstances. The question before the jury was purely one of fact. The reason why the defendant was on the wrong side of the highway was explained. There was evidence that tended to prove that defendant was not negligent even though his car did go over on the wrong side of the road. When there is evidence as to what actually happened, there is no room for presumptions. We are satisfied that the judgment is not against the manifest weight of the evidence. The judgment is supported by the evidence.

Plaintiff argues that the trial court should have directed a verdict in his behalf, and asks that we reverse the judgment and remand the cause with directions to enter judgment for damages to the car in the amount proven and not disputed, to enter a finding of guilty against defendant, and to submit the question of damages because of personal injuries to a jury. Plaintiff leans heavily on the case of *Harrison v. Bingheim,* 350 Ill. 269. We do not believe this case supports his contention. Each tort case must rest on its own facts. Having come to the conclusion that the judgment is supported by the evidence, we also reject the contention that a verdict should have been directed for plaintiff, or that we should now direct a finding of guilty for plaintiff.

Plaintiff maintains that the trial court erred in giving the following instruction for the defendant:

"If the jury believe from the evidence that the al-

leged injury was accidental and that neither the plaintiff nor the defendant was negligent, the jury should find the defendant not guilty.''

Substantially the same instruction was approved in *City of Chicago v. Lavelle,* 83 Ill. 482; *Bentkowski v. Bryan,* 299 Ill. App. 217; and *Brown v. Richardson,* 177 Ill. App. 488. The giving of this instruction should be discouraged. The jurors are instructed on the issues of the case and this form of instruction tends to divert their attention from the issues. In the instant case defendant's attorney made no contention that plaintiff was guilty of contributory negligence. The instruction complained of not only required the injury to be accidental, but also that ''neither the plaintiff nor the defendant was negligent'' in order to justify acquittal. While we do not approve the giving of the instruction, we are of the opinion that it was so guarded that it could not harm plaintiff, and that the giving of it did not constitute reversible error.

Plaintiff also complains of the giving of instruction 13, which reads:

''You are instructed that the law does not hold a person who without negligence on his part is faced with sudden and imminent danger to the same degree of judgment and presence of mind as one not faced with such danger, and if you find from the preponderance of the evidence under the instructions of the court that without negligence on his part, the defendant, Paul Barth, was confronted with a sudden imminent danger, then the law did not require of him the same degree of judgment and presence of mind as under circumstances not involving such sudden and imminent danger, if any you find. He is required to exercise that judgment and due care which a reasonable man would exercise under similar circumstances to those appearing in this case from the evidence herein.''

Plaintiff states that this instruction submits to the jury a question of fact, which the evidence shows was

not open for their consideration, and that it did not explain what circumstances in connection with sudden peril must be shown to bring the defendant within the rule; that it assumes that any sudden peril not brought about solely by defendant's conduct brings the emergency rule into operation to excuse liability, and that in order to bring himself within the rule defendant must show that the sudden peril which caused him to act must not have been brought about in whole or in part by his own fault. The instruction twice requires the jury to find that the person confronted with sudden and imminent danger is "without negligence on his part," before the rule applies. The instruction concludes by saying "he is required to exercise that judgment and due care which a reasonable man would exercise under similar circumstances to those appearing in this case from the evidence appearing herein." Our view is that the instruction correctly states the law and that it is applicable to the facts of the case. Plaintiff also complains of instruction 15, which reads:

"If you find from a preponderance of the evidence and under the instructions of the court that the accident in question was due solely to the negligence of one Narvid and not through any negligence as charged on the part of the defendant, Paul Barth, then in that event you should find your verdict in favor of the defendant and against the plaintiff."

Plaintiff states that this instruction injects into the case an element which has no foundation in the evidence; that there was no contention that Narvid's negligence proximately caused the collision; that defendant merely sought to excuse his own presumed negligence by the fact that a third party, Narvid, placed him in peril from which, in his endeavor to extricate himself, he lost control of his car; and that it directs a verdict without requiring the jury to find that the injury was the proximate result of Narvid's sole negligence. The record shows that in his argument to

the jury defendant's counsel contended that the accident was proximately due to the sole negligence of Narvid and not to any negligence of the defendant. The instruction told the jury that it must find both that the accident was "due solely to the negligence of one Narvid" and that it was "not through any negligence as charged on the part of the defendant, Paul Barth." Furthermore, in his argument to the jury defendant's attorney told the jury that plaintiff's attorney in his closing argument would probably say, in claiming both cars were negligent, "that under the law if they both [Narvid and defendant] were negligent that they can still recover." Defendant's attorney then stated to the jury: "That is true—that is common sense." Instruction 3, given at the plaintiff's request, told the jury "that to constitute proximate cause, the negligent act or omission need not be the sole cause, nor the last or nearest cause, but it is sufficient if it occurs with some other cause acting at the same time, which, in combination with it, produces the injury." Instruction 10 told the jury, in part, that if the jury found that the defendant was guilty of the negligence charged, by which plaintiff was injured, "then you are instructed that it would be no defense for the said defendant, Paul Barth, to show that the operator of the Narvid car was also guilty of negligence at the time and place in question." Instruction 11 told the jury that if the two plaintiffs, naming them, were injured in person and property, respectively, "as a result of the joint negligence of the operators of both the Narvid car and the Barth car," etc., then the plaintiffs could recover. We are of the opinion that instruction 15 is not subject to criticism. The jury was fairly instructed.

Plaintiff urges that the court admitted improper and rejected proper evidence. He points out that when plaintiff's counsel interrogated defendant under section 60 of the Civil Practice Act [Ill. Rev. Stat. 1943,

ch. 110, par. 184; Jones Ill. Stats. Ann. 104.060] concerning his speed five or six blocks from the scene of the collision, he asked: ''How fast was the car traveling that you passed?'' Plaintiff complains that the court erroneously sustained an objection to this question; that on the vital issue of speed that evidence was admissible; and that five or six blocks away from the scene of the collision was not too remote. Whether this was too remote from the scene of the collision was for the determination of the trial judge in his sound discretion, and we find that in this respect he did not abuse his discretion. The intersecting highway, Ridgeland avenue, lay between the scene of the accident and the place four to six blocks west covered by the question. Plaintiff complains that in cross-examining plaintiff, defendant's counsel was permitted over objection to bring into the record an admission that he was arrested and fined for speeding at 42 miles an hour very recently before the trial. Defendant's counsel was under the misapprehension that the arrest had occurred after a convulsion which the evidence showed plaintiff suffered on July 23, 1942. It developed that the arrest occurred July 17, 1942, which antedates the convulsion. There had been testimony from plaintiff about his not driving a car alone at any time after the accident. The interrogation went entirely to the issue of plaintiff's health. At no time during the trial did defendant claim that plaintiff on the evening of the occurrence involved in the instant suit, was guilty of excessive speed or contributory negligence. Defendant should not have asked the question and the court should have sustained the objection. However, we are of the opinion that it did not harm plaintiff.

Plaintiff asserts that it was prejudicial error for defendant's counsel to inquire about a Justice of the Peace hearing when Narvid was tried. Plaintiff states that the question was put to the witness in a very dam-

aging light; that it was assumed in the question that Narvid was tried, and that when the witness answered, "I don't know, was he?" defendant's counsel said to the witness, "You don't know that he was there?" referring to plaintiff's attorney, Mr. Ellis; and that it is not disputed that plaintiff was not present in the justice court when Narvid was tried. The record shows that plaintiff's attorney introduced the testimony of plaintiff on direct examination that he had "signed something" and that he had never appeared at any hearing. We are of the opinion that it was then competent for defendant to cross-examine and show that although not personally present, plaintiff was represented by Mr. Ellis as his attorney. Plaintiff sought to show that he did not know what he signed and that he did not appear at a hearing. We agree that he opened the door for the cross-examination that followed. Plaintiff points out that when defendant's counsel brought out evidence that plaintiff signed a complaint before a Justice of the Peace, he asked the police officer as to conversations with those present. He states that defendant's attorney handed the police officer's report to the trial judge after asking him if it contained anything of the conversations, and that defendant's counsel said: "I am perfectly willing to have that put into the record. I realize over objection it can't be admitted." When plaintiff's counsel objected to the document and to any comments on it, defendant's counsel said: "Well, over objection, that is correct." Plaintiff states that this could have no other effect than to lead the jury to believe that the policeman's report contained something detrimental to plaintiff, which counsel did not wish the jury to see or hear read. Plaintiff's counsel opened the door for this offer. On the original examination of police officer John Morrison, defendant's counsel made no reference to any police report. It was plaintiff's counsel who brought up the subject of the police report on cross-

examination; and by such cross-examination he attempted to gain some advantage from what the report did or did not show, or he would not have asked the witness about it. Defendant urges that in that situation, unless he had shown a willingness that the report go into evidence, plaintiff's counsel would have demanded to know of the jury in his argument, after the offer was too late, why defendant was afraid of the report, or why he did not offer the report. Under the circumstances, the action of defendant's counsel did not constitute reversible error. No harm was done to plaintiff by this offer because the court told the jury that from the report it was obvious that the witness did not see the accident, and defendant's counsel immediately stated that the ruling of the court was correct and that the only reason he asked for the report was because plaintiff's counsel had asked about it.

Plaintiff complains that in the redirect examination of the Justice of the Peace, defendant's counsel attempted to show that the witness had a diagram presented to him in the trial of Narvid, which was made by Narvid, but never put in evidence, and that this was clearly a self-serving declaration. Plaintiff states that although the court sustained the objection and the jury was instructed to disregard it, the damage was done by the remarks and conduct of counsel which no instruction could cure. We are of the opinion that the attempt to introduce the diagram did not harm plaintiff and that he was not prejudiced because of the questions concerning it. Plaintiff also states that it was error to ask the Justice of the Peace if he accepted as true the testimony given by Narvid; that the trend of the examination of the Justice of the Peace was to show that Narvid was convicted of passing an automobile improperly; that the conviction was based on the testimony of defendant and Maroney; that such conduct could have no other effect than to cause the jury to believe everything the two said and to believe that

because Narvid was convicted of passing Maroney's car improperly that he thereby created a sudden peril and that since his conviction was on a complaint signed by both defendant and plaintiff, the defendant's negligence did not create the emergency which he relied on to excuse his conduct. Plaintiff opened the door by stating repeatedly that he did not know what he had signed and by testifying that there was a Justice of the Peace hearing and by later cross-examination of defendant's witnesses. For the purpose of showing that plaintiff had signed a complaint charging Narvid with reckless driving, which was inconsistent with the testimony of plaintiff and Miss Plucinski that Narvid was a considerable distance west of the Maroney car at the time defendant passed the Maroney car, defendant called the Justice of the Peace, who appeared and produced his file and testified on direct examination only concerning the signing of the complaint, the explanation to the plaintiff of his right to sign it and the circumstances surrounding the signing of it by plaintiff. Defendant's attorney made no effort to show what happened before the Justice of the Peace hearing. He made no effort to show what the judge decided, or what the outcome of the case against Narvid was. Plaintiff's counsel on cross-examination of the Justice of the Peace sought to show that the complaint was improperly changed on the trial from reckless driving to passing a vehicle improperly. It is clear that plaintiff opened the door for a wide inquiry on redirect examination. The court did not allow the witness to answer the question as to whether he accepted as true the testimony given by Narvid.

Finally, plaintiff urges that defendant's counsel was guilty of prejudicial conduct. After a careful study of the record we are satisfied that this charge is without merit. Because of these views, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

KILEY and LUPE, JJ., concur.