John Stone, Appellant, v. Warehouse & Terminal Cartage Company, Appellee.

Gen. No. 46,483.

First District, Second Division.
May 17, 1955.
Rehearing denied June 1, 1955.
Released for publication June 30, 1955.

 

Lewis L. Root, and Meyer S. Miller, both of Chicago, for appellant.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, for appellee; Max E. Wildman, John M. O'Connor, Jr., and John J. Edman, all of Chicago, of counsel.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an action brought by plaintiff, John Stone, against the defendant, Warehouse & Terminal Cartage Company, a corporation, growing out of a collision between defendant's motor truck, driven by its employee, and an automobile driven by plaintiff, at or near the intersection of Hubbard and Ada streets in Chicago. The plaintiff alleged injuries and the negligence of the defendant, all of which was denied by the defendant. The jury found for the defendant. The court overruled a motion for new trial and entered judgment accordingly, from which judgment this appeal is taken.

The plaintiff contends (1) that the evidence is in conflict and that the court erred in permitting the defendant's counsel, under the guise of refreshing a witness' recollection, to prove on cross-examination the contents of a police report, and (2) that the court

erred in giving to the jury, at the defendant's instance, a large number of instructions peremptory in form.

At the trial of the case the plaintiff, on direct examination, testified that right after the accident, after he had been out of the car for about five minutes, his stomach was numb, he had a headache and suddenly started getting pains in his back; that he got the pains in his stomach after the police came and took the report. On cross-examination he testified that at the scene of the accident he had told the police how it happened and told them about his injuries; that he told them he was going to the hospital; that he did not know whether the police made a report on the injuries or whether they put down what he told them; that he did not remember whether they asked him questions about distances and speed. Plaintiff then offered the police officer who had made out the police report. The officer testified that he had no independent recollection of the accident; that he made his report and record in accordance with his duty; that he remembered nothing about the occurrence, the vehicles, any conversations that took place, or whether anyone was injured. The record of the Chicago Police Department was presented to him and he identified it and stated that it was made at the time of the accident and is in his handwriting.

The defendant then cross-examined the police officer in great detail with reference to his recollection of the incident. The report was shown to him and he stated that it did not refresh his recollection. He then stated it did refresh his recollection as to whether either driver was injured in the accident, and that "according to my accident report there were no injuries at all. If I made this report I must have talked to the drivers of the two vehicles and asked them whether or not they were injured. . . . In this particular case I do not remember, but that is my usual procedure. If Plaintiff told me that he was injured I would have made a nota-

231

tion to that effect on this accident report. I did not make such a notation." He also stated that he had no independent recollection as to whether he asked the plaintiff his estimated speed at the time of the accident and that the report did not refresh his recollection, though it indicates that the question was asked. He then testified from the report as to the speed of plaintiff's car at the time of the accident, and that according to his report the plaintiff had first noticed the danger at ten feet. He stated that the report form has a space to indicate injured persons and all details as to the injuries, which space was not filled in. All of this evidence was introduced over the objection of the plaintiff.

From the record it appears that there were only two eyewitnesses who testified to the occurrence, the plaintiff and the defendant's driver. There were no stop signs at the intersection where the collision occurred. The testimony was in sharp conflict, as to the speed and the relative positions of the vehicles of both plaintiff and the defendant at the time when they approached and entered the intersection. The defendant's vehicle was approaching the intersection from the right of the plaintiff. The police report was marked as defendant's exhibit No. 1 for identification, but was not offered nor received in evidence.

The defendant argues that, because the plaintiff called the police officer as his witness, the mere mention of the report by him might create an inference in the minds of the jurors that the report would support the plaintiff's case. The principal evidence which was elicited from the plaintiff as to the statements which he made to the police officers at the time of the occurrence was brought out by the defendant on cross-examination. On direct examination, with respect to his contact with the police, plaintiff's only statements were that he had told the defendant's driver that he was going to call the police, and that after the officers

came and took the report he got pains in his stomach and he told them he was going to the hospital. All further evidence as to plaintiff's conversations with the police was brought out on cross-examination.

Under the circumstances in the case, the plaintiff called the police officer to rebut the possible unfavorable inference that the jury might draw if the police officer was not called. In McCormick on Evidence, Sec. 249, it is said:

"When it would be natural under the circumstances for a party to call a particular witness . . . his adversary may use this failure as the basis for invoking an adverse inference. . . .

"Most of the controversy arises in respect to the failure to call a witness. It is generally agreed that when a potential witness is available, and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and where his relationship with one of the parties is such that the witness would ordinarily be expected to favor him, then if such party does not produce his testimony, the inference arises that it would have been unfavorable.

"It is often said that if the witness is 'equally accessible' to both parties, no inference springs from the failure of either to call him. This can hardly be accurate, as the inference is frequently allowed when the witness could easily be called or subpenaed by either party. What is probably meant is that when so far as appears the witness would be as likely to be favorable to one party as the other, there will be no inference. But even here, it seems that equality of favor is nearly always debatable, and that though the judge thinks the witness would be as likely to favor one party as the other, he should permit either party to argue the inference against the adversary. At least, it would appear in this supposed case of 'equal favor,' if the witness's knowledge is directed toward a particular issue, that

233

then the argument should be available against the party who has the burden of persuasion on that issue." (Citing Deaver v. St. Louis Public Service Co. (Mo. App.), 199 S.W.2d 83.)

 If the evidence of the police officer on direct examination, sparse as it was and which was admitted without objection, had been improper, the defendant could have objected and moved that it be stricken. No such action was taken. The defendant by his detailed cross-examination concerning the report brought before the jury the contents of the document which itself could not properly be admitted in evidence. The trial court erred in permitting such cross-examination.

The defendant relies on the case of Rzeszewski v. Barth, 324 Ill. App. 345, in which case the plaintiff complained that the defendant's counsel, on cross-examination of the plaintiff, asked about a hearing before a justice of the peace trying the driver of the third car involved in a collision between plaintiff and defendant. On direct examination the plaintiff had there stated that he had signed something but he had not appeared at a hearing. The court held that under those circumstances it was competent for the defendant to cross-examine and show that if he was not personally present he was represented at the hearing by his attorney.

The defendant's counsel on cross-examination asked a police officer if the report contained any of the conversations which took place there. The defendant's counsel then handed the police officer's report to the trial judge and stated that he was willing to have the report put in the record though he realized that it could not be admitted over objection. The plaintiff argued that this conduct on the part of the defendant would cause the jury to believe that the policeman's report contained something detrimental to the plaintiff. The court held that the action of the defendant's counsel under the circumstances was not reversible

234

error because the question of the police report was brought up by the plaintiff's counsel on cross-examination. In the case before us the reference to the contents of the police report was first brought out by the defendant on the cross-examination of the plaintiff. The officer stated that he did not remember anything that happened at the time of the occurrence. If any inference could be drawn it would have been as reasonable to assume that the jury might infer that the report supported the defendant rather than the plaintiff. The circumstances in the two cases are not similar.

The court gave the jury eighteen instructions, three of which were given on behalf of the plaintiff. Of the fifteen given on behalf of the defendant, six were peremptory in form and included the phrase "you should find the defendant not guilty," or its equivalent. At the request of the defendant the court gave the following instruction:

"You are instructed that a certain Ordinance of the City of Chicago in full force and effect at the time of the occurrence complained of, provided among other things as follows:

" 'Subject to the provisions of this chapter, the operator of a vehicle shall give the right of way to the operator of a vehicle approaching along an intersecting street from the right, and shall have the right of way over those approaching from the left.'

"If you believe from the evidence under the instructions of the court, that at the time and place in question the defendant's motor vehicle was being driven in a northerly direction on Ada Street and that the plaintiff was driving his motor vehicle in an Easterly direction on Hubbard Street, and that the defendant's automobile was approaching the intersection from the right of the plaintiff; and if you further believe that plaintiff in the exercise of due care would or should have seen that, unless he yielded the right-of-way, he

might or would collide with the defendant's motor vehicle, then, under such circumstances, the defendant was entitled to the right of way and the plaintiff's duty was to yield the right of way to the defendant; and if you further believe from the evidence that the plaintiff did not yield the right of way to the defendant and that his failure in this respect was negligence which proximately contributed in any degree to cause the accident and injuries to the plaintiff, then, under such circumstances, the plaintiff cannot recover."

An instruction much less erroneous was condemned in Alexander v. Sullivan, 334 Ill. App. 42, where the court says:

"The instruction in substance and effect placed no duty whatever on the defendant and told the jury that the defendant's car had the right of way regardless of its speed and what distance it was away from the intersection when the plaintiff's car entered the intersection." (Citing Salmon v. Wilson, 227 Ill. App. 286, and Heidler Hardwood Lumber Co. v. Wilson & Bennett Mfg. Co., 243 Ill. App. 89.)

The giving of an inordinate number of instructions peremptory in form and containing the phrase "you should find the defendant not guilty," or its equivalent, has been repeatedly condémned by our courts, and it has been said that in a close case excessive repetition of such a phrase is reversible error. Loucks v. Pierce, 341 Ill. App. 253; Alexander v. Sullivan, 334 Ill. App. 42; Baker v. Thompson, 337 Ill. App. 327. Here the evidence was in close conflict. We realize the extreme hardship placed upon a judge in a trial court who is urged to give an unlimited number of instructions peremptory in form. With a little care on the part of counsel, instructions could be properly drawn which would present their theory of the case to the jury without repetition and without a request for a finding. The purpose of a lawsuit is to find the truth as nearly as it is humanly possible. In order to reach

such a goal the trial court must have reasonable co-operation on the part of counsel. In any case the court could have, if he so desired, rejected the proffered improperly worded instructions and could have given instructions of his own properly stating the legal principles involved. Geiselman v. Strubhar, 302 Ill. App. 23; Muller v. Equitable Life Assur. Society, 293 Ill. App. 555. Still the primary duty rests on counsel. The present tendency in litigation is to depart from the ancient theory that a lawsuit is a contest of wits. There is an attempt to approach the ideal situation where a lawsuit is tried without a display of the guerilla tactics of surprise attack and without the prejudice which undoubtedly is engendered in the jury by the court repeating—almost as a matter of rote—at the conclusion of the instructions, the mandatory phrase instructing the jury to find specifically either for the plaintiff or the defendant. In this case the vice in the form of the instructions is further intensified by the impropriety of one of them.

With the instructions there was given to the jury, over the objection of the plaintiff, a special interrogatory as follows: "Was the occurrence in question a mere accident which happened without the fault of either the plaintiff or the defendant?" To this interrogatory the jury answered "Yes." Counsel for the defendant make a point that since the jury in answering the special interrogatory found that the occurrence was a mere accident happening without the fault of either the plaintiff or the defendant, it would necessitate finding for the defendant even if the general verdict had been for the plaintiff; and since the plaintiff made no motion to set aside the special finding and in his motion for a new trial made no objection to it, it binds him here. The giving of the interrogatory was objected to, and the plaintiff calls attention to that objection in his motion for a new trial. In our opinion the interrogatory should not have been given.

237

In Rzeszewski v. Barth, 324 Ill. App. 345, the court says:

"Plaintiff maintains that the trial court erred in giving the following instruction for the defendant:

" 'If the jury believe from the evidence that the alleged injury was accidental and that neither the plaintiff nor the defendant was negligent, the jury should find the defendant not guilty.'

"Substantially the same instruction was approved in City of Chicago v. Lavelle, 83 Ill. 482; Bentkowski v. Bryan, 299 Ill. App. 217; and Brown v. Richardson, 177 Ill. App. 488. The giving of this instruction should be discouraged. The jurors are instructed on the issues of the case and this form of instruction tends to divert their attention from the issues. In the instant case defendant's attorney made no contention that plaintiff was guilty of contributory negligence. The instruction complained of not only required the injury to be accidental, but also that 'neither the plaintiff nor the defendant was negligent' in order to justify acquittal. While we do not approve the giving of the instruction, we are of the opinion that it was so guarded that it could not harm plaintiff, and that the giving of it did not constitute reversible error."

In Williams v. Matlin, 328 Ill. App. 645, the court says:

"Objection is made to the refusal of a stock instruction that if the jury believed 'from a preponderance of the evidence that the plaintiff was injured as a result of an accident which occurred without the fault either of the plaintiff or of the defendant, or either of them, then you are instructed the plaintiff cannot recover and you should find the defendant not guilty.' We agree with the statement of the Third Division of this court in Rzeszewski v. Barth, 324 Ill. App. 345, 356, that the giving of this instruction should be discouraged. It is only when there is evidence tending to show that plaintiff was injured through accident alone, not

coupled with negligence, that the giving of such instruction is permissible. Streeter v. Humrichouse, 357 Ill. 234, 244. When proper, it merely tells the jury what should be known to the man on the street. Moreover, in practically every case, as here, the jury is instructed that it should find defendant not guilty unless the plaintiff proves by the preponderance of the evidence, among other things, that the defendant was guilty of negligence proximately and directly causing the injuries complained of."

See also Crutchfield v. Meyer, 414 Ill. 210.

There is nothing in the evidence to indicate that the occurrence was an accident without the fault of either party. Neither the plaintiff nor the defendant tried the case on such theory. Since such an instruction is bad, then it seems to logically follow that the interrogatory would be equally bad.

In this case the evidence was in direct conflict. The logical line separating a verdict for the plaintiff from a verdict for the defendant was extremely narrow. Under those circumstances the number of peremptory instructions concluding with the equivalent of a finding for the defendant, together with the giving of an erroneous instruction, the improper admission of evidence and the submission of an improper interrogatory, might have seriously influenced the jury in their deliberations and have been a decisive factor in their verdict.

The judgment of the circuit court is reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

ROBSON and SCHWARTZ, JJ., concur.