THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD SHANNON, Defendant-Appellant.

First District (4th Division)   No. 85—1898

Opinion filed October 30, 1986.—Rehearing denied December 16, 1986.

526

JIGANTI, J., dissenting.

Frank Celani, of Lansing, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and Diane M. Dickett, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, defendant, Donald Shannon, was convicted of attempted murder (Ill. Rev. Stat. 1983, ch. 38, par. 8—4), armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), and two counts of aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a)). Defendant was sentenced to a term of 8 years on the attempted-murder conviction. No sentence was entered as to the armed-violence conviction nor was a sentence imposed as to the two counts of aggravated battery, since these two counts were held to merge with the attempted-murder charge. Defendant appeals his armed-violence and attempted-murder convictions.

On appeal, defendant argues that (1) any evidence or statements should have been suppressed because the police department's destruction of evidence violated his due process rights, his alleged statement was involuntarily given to the police, there was no probable cause to arrest him, and there was failure to present in a reasonable time; (2) the trial court erred in excluding testimony of a third party's state of mind; (3) the armed-violence statute is unconstitutional; and (4) he was not convicted beyond a reasonable doubt of attempted murder.

Testimony at trial revealed that on August 1, 1983, at approximately 1:45 a.m., John Vohs, the victim, was riding his motorcycle westbound on 142nd Street in Dolton. As he proceeded west, a Cadillac automobile with several occupants approached, traveling in the left lane; Vohs was traveling in the right lane. At or near the intersection of 142nd Street and Cottage Grove Avenue, shots were

fired from the Cadillac, striking Vohs twice. Vohs immediately drove himself to the nearest house, where he asked the occupants to call the police because he had been shot. Vohs, by telephone, told the police that he had been shot by an individual in a white-over-brown Cadillac car, that his assailant wore a black T-shirt and had tattoos on his arm, and that the shots were fired from the passenger side of the car. The police immediately put out a search for a car fitting the description.

At approximately 2:10 a.m., Officer Robert Brosnan of the Dolton police department saw a car matching the description of that given by Vohs. The officer stopped the vehicle and ordered the individuals out of the car. A man (later identified as defendant) exited the car from the front passenger seat. Officer Brosnan noticed that defendant was wearing a black T-shirt and had tattoos on both arms. He further noticed that one of defendant's companions, Michael Ivanov, was also wearing a black T-shirt and had tattoos on his arm. Defendant and his companions were taken to the police station and placed under arrest.

Officer John Roe, a member of the Dolton police department, testified that at or about 7:30 a.m. on August 2, 1983, defendant requested to speak with Sergeant Pfotenhauer, one of the officers investigating the shooting of Vohs. When Officer Roe asked him why, defendant replied, "I did the shooting, the others had nothing to do with it." Defendant, however, denied making this statement.

Defendant testified in his own behalf. He admitted that he was in the Cadillac car on the morning in question and that a shooting had occurred. He stated that he was driving the car at the time of the shooting and that Ivanov was the one who fired the shots. Defendant further testified that after the shooting he drove into an alley and exited the car. He informed Ivanov that he "did not want anything to do with the shooting." Ivanov then told defendant and his companion to get back into the car. Defendant entered the car, sitting in the front passenger seat.

Defendant first contends that the trial court's decision regarding his various motions to suppress was manifestly erroneous. His motions to suppress were based on several grounds. He argues that any evidence found or testimony given should have been suppressed because his due process rights were violated when tape recordings of police radio dispatches, which led to his arrest, were destroyed. Testimony at the suppression hearing revealed that the tape recordings contained a description of Vohs' assailants and information regarding the automobile in which they were riding. Further testimony revealed that these tapes were destroyed pursuant to normal procedures of the Dolton police department.

■ Before the destruction of evidence will be held to violate a defendant's due process right, it must be proved that the destroyed evidence was material to defendant's case. The United States Supreme Court in *California v. Trombetta* (1984), 467 U.S. 479, 488-89, 81 L. Ed. 2d 413, 422, 104 S. Ct. 2528, 2534, announced the following test in evaluating the materiality of destroyed evidence:

"Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to pay a significant role in the suspect's defense. To meet this standard of constitutional materiality [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

■ Testimony at the pretrial hearing indicated that the destroyed tapes contained information about the victim's assailants. It did not contain any exculpatory information. Thus, we conclude that the destroyed evidence was not material and, therefore, defendant's due process rights were not violated.

■ Defendant next contends that the police did not have probable cause to arrest him. A review of the record indicates that the authorities had sufficient probable cause to arrest defendant. The record shows that a car matching the description of that of the victim's assailants was stopped; that defendant was in the car; and that defendant wore a black T-shirt and there were tattoos on his arm, as described by the victim. Furthermore, after the automobile was stopped, the officer's search of the car revealed an illegal "sap glove" and a spent .32-caliber casing. Thus, we conclude, the arresting officer had knowledge of facts that would lead a reasonable person to believe a crime had occurred and that defendant had committed the crime. *People v. Eddmonds* (1984), 101 Ill. 2d 44, 60, 461 N.E.2d 347, 354.

■ Defendant next argues that any statements attributable to him while in custody were involuntary and, therefore, should have been suppressed. The test for determining voluntariness of a statement is whether under the totality of the circumstances the statement was made freely and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed. *People v. Martin* (1984), 102 Ill. 2d 412, 427, 466 N.E.2d 228, 234, quoting *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 681, 686.

■ Defendant contends that because he was on medication needed to control his severe headaches, his failure to secure such medication while in custody caused him to lose control of his faculties,

making him incapable of exercising his free will. He does not contend that any statement made by him while in custody was due to police misconduct. Although defendant may have become confused and disoriented as a result of his failure to take his prescribed medication, we conclude that this is insufficient proof that defendant's will was overcome at the time he made statements to the authorities. (See *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) Furthermore, several police officers testified that defendant did not seem disoriented or confused while he was in custody.

■ Defendant argues that the trial court erred in denying his motion to suppress statements and evidence because of the State's failure to present his case without unnecessary delay after his arrest. The determination of what is unnecessary or unreasonable delay depends upon the facts and circumstances of each case. (*People v. Jackson* (1961), 23 Ill. 2d 274, 278, 178 N.E.2d 299, 301.) Some latitude is allowed, and presentment to a judge need be performed only with that reasonable promptness which circumstances permit. *People v. Martin* (1984), 121 Ill. App. 3d 196, 208, 459 N.E.2d 279, 288.

■ A delay of 36 hours before arraignment is usually not considered unreasonable detention. (See *People v. Martin* (1984), 121 Ill. App. 3d 196, 208, 459 N.E.2d 279, 288.) In the instant case, defendant was taken before a judicial magistrate 29 hours after his arrest. As the court determined in *Martin,* delay of a day or a day and a half is reasonable considering the time necessary to perform the administrative steps incident to arrest. (121 Ill. App. 3d 196, 209, 459 N.E.2d 279.) We adopt the reasoning of *Martin* and conclude that, under the circumstances of the case at bar, a delay of 29 hours is not unreasonable.

Defendant next argues that the armed-violence statute is unconstitutional and that the trial court committed reversible error in failing to submit his armed-violence instructions No. 1 and No. 2 to the jury.

■ The final judgment in a criminal case is the sentence, and in the absence of the imposition of a sentence, an appeal cannot be entertained. (*People v. Caballero* (1984), 102 Ill. 2d 23, 51, 464 N.E.2d 223, 236-37.) The jury found defendant guilty of armed violence, based on aggravated battery causing great bodily harm. The trial court, however, did not impose a sentence on the armed-violence conviction. Thus, defendant's appeal of the jury's finding cannot be entertained by this court. We therefore dismiss defendant's appeal from the conviction of armed violence. Because of this dismissal, we need not address any other arguments defendant makes as to his armed-vio-

lence conviction.

■ Defendant next contends that the trial court committed error when it refused to allow testimony concerning Ivanov's state of mind. We agree. However, a review of the excluded testimony indicates its exclusion was harmless error. If allowed to testify, the witness would have testified that he had been Ivanov's landlord for the six months prior to the shooting; that during that period, Ivanov had discussed with him on several occasions that he wanted to "get" the victim, whom he believed was responsible for the killing of his brother. Defendant, at trial, claimed that it was Ivanov who shot the victim.

In light of the overwhelming evidence of defendant's guilt, we conclude the excluded testimony was harmless error. (*People v. Taylor* (1984), 101 Ill. 2d 508, 517, 463 N.E.2d 705, 710.) Defendant admitted he was in the car when the victim was shot. Testimony from Officer Roe indicated that defendant admitted to him that he shot the victim. When defendant was arrested for the shooting, he exited the Cadillac car from the passenger side; he wore a black T-shirt and there were tattoos on his arm. This description matched the one given to police by the victim immediately after the shooting. Finally, defendant was arrested approximately 30 minutes after the shooting occurred. In light of these facts, as indicated, the error was harmless.

■ Lastly, defendant contends that the State did not prove him guilty of attempted murder beyond a reasonable doubt. It is sufficient if the evidence as a whole satisfies the trier of fact of defendant's guilt beyond a reasonable doubt. (*People v. Foster* (1979), 76 Ill. 2d 365, 374, 392 N.E.2d 6, 9.) An appellate court will not substitute its judgment for that of the trial court unless its judgment is based on insufficient or unsatisfactory evidence. (*People v. Cokley* (1977), 45 Ill. App. 3d 888, 890, 360 N.E.2d 545, 547.) A review of the evidence indicates there was sufficient evidence for the jury to convict defendant of attempted murder beyond a reasonable doubt.

■ For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed and defendant's appeal of his armed-violence conviction is dismissed. Further, pursuant to the State's request and in accordance with *People v. Nicholls* (1978), 71 Ill. 2d 166, and *People v. Agnew* (1985), 105 Ill. 2d 275, we assess defendant $75 as costs for this appeal and incorporate it as part of our judgment.

Appeal dismissed in part and judgment affirmed.

LINN, P.J., concurs.

JUSTICE JIGANTI dissenting:

The defendant, Donald Shannon, was convicted and sentenced for the attempted murder of John Vohs. Vohs was riding a motorcycle when a man in a car began firing at him, hitting him twice. Vohs testified that the man in the passenger's seat was the man who shot him. Vohs stated that he saw the man's arm, which had several tattoos on it. The man was wearing a black T-shirt. Less than a half hour later a police officer stopped the defendant's car. The defendant exited from the passenger side. The defendant had on a black T-shirt and tattoos on both arms. The driver of the car, Michael Ivanov, also was wearing a black T-shirt and had tattoos on both arms.

The defendant testified that at the time of the occurrence Ivanov was the passenger in the car and defendant the driver. He did not know Ivanov was going to shoot the victim. After the shooting they went to an alley where the defendant and another passenger got out of the car and walked away. Ivanov then began driving the car and the defendant reentered the car, on the passenger side. He was in that position when the car was stopped a short time later by the police.

The victim was a member of a motorcycle club called Hell's Henchmen. The defendant attempted to show that Ivanov had a desire to get revenge on the Hell's Henchmen because Ivanov believed that Hell's Henchmen were responsible for Ivanov's brother's death. To do this the defendant sought to call as a witness a person who had known Ivanov for some time. Defendant made an offer of proof that the proposed witness would testify that on 10 or 12 occasions Ivanov had expressed an intent and desire to get revenge on the Hell's Henchmen. This testimony was excluded as hearsay. While in fact the testimony was hearsay, it was admissible in evidence as an exception to the hearsay rule because it shows the state of mind of the declarant. *People v. Hampton* (1969), 44 Ill. 2d 41, 46, 253 N.E.2d 385; E. Cleary & M. Graham, Illinois Evidence sec. 803.4, at 554 (4th ed. 1984).

The majority concedes that the exclusion of this evidence was error. However, it concludes that there was overwhelming evidence of the defendant's guilt, citing the fact that the defendant was in the passenger seat of the car when arrested, and that there was testimony from a police officer that the defendant admitted that he shot the victim. However, the alleged admission was testified to only by one officer and it consisted of one sentence. The defendant denies that he ever made the statement. The only identification of the perpetrator was an arm with tattoos and a black T-shirt, a description that

equally fits the defendant and Ivanov. Essentially, in my estimation, it is a question of credibility. It would substantially corroborate the defendant's version if the witness had been allowed to testify that, indeed, Ivanov expressed a reason why the shooting took place. There is nothing to indicate why the defendant would wish to shoot the victim.

I would reverse the conviction and remand the matter back for a new trial.