Marion Ray Brown, Administrator of the Estate of Jacqueline M. Brown, Deceased, and Marion Ray Brown, Individually, Plaintiffs-Appellees, v. Sam Nale, Administrator of the Estate of Rosemary Nale, Deceased, Defendant-Appellant.

Gen. No. 10,976.

Fourth District.

February 20, 1969.

Edward Litak and Stifler & Snyder, of Danville (Edward Litak and Thomas C. Stifler, of counsel), for appellant.

C. W. Dukes Law Offices, of Danville (C. W. Dukes, of counsel), for appellees.

TRAPP, P. J.

A jury returned verdicts for plaintiff, individually for personal injuries, and as administrator of the estate of his deceased wife, and found for the plaintiff as counter-defendant upon the counterclaim of the defendant administrator for the deceased Rosemary Nale. Post-trial motions were denied, and the defendant appeals.

There were no known eyewitnesses to the automobile collision which resulted in the deaths and injuries in issue. The first report of the event was received by the Sheriff's office of Vermilion County at 12:40 a. m., December 12, 1965, but the source of the report has never been ascertained. The automobiles were discovered at a point 1.1 miles south of the Village of Westville on Illinois Route 1. This highway is described as 48 feet wide, having two lanes northbound and two lanes southbound, but without any median or division separating the respective directions of traffic.

It is agreed that the cars came into collision upon the northbound traffic lane and were found upon the east shoulder but partially upon the pavement, with the right

front corner of plaintiff's Buick driven some two feet into the left side of defendant's Chevrolet.

Plaintiff was called but was not permitted to testify upon objection made pursuant to the statute, c 51, § 2, Ill Rev Stats 1965. There is no dispute that plaintiff's car was northbound. It is the latter's contention that the car of the defendant's decedent was southbound, became out of control on a pavement described as wet and slippery and moved into the northbound lanes and caused the collision. This is supported by complex testimony of opinion reconstructing the movement of the vehicles.

It is the theory of defendant that the car of Rosemary Nale was travelling north in the right portion of the northbound lane and that the plaintiff, passing in the left portion of the northbound lane, struck the Nale car and that they ultimately collided with great force. This position is also propounded in complex testimony of opinion reconstructing the event.

There is no issue raised which calls for analysis of the contradictory reconstruction testimony. It is urged that the court erred in admitting testimony in the following categories: (1) testimony as to the "reputation" of the plaintiff for careful driving, and of the reputation of the deceased, Jacqueline M. Brown, for careful habits, and (2) the testimony of three witnesses that they had seen Rosemary Nale driving southward toward the place of collision a relatively short time before.

Plaintiff, individually and as administrator of the decedent's estate, undertook to prove that each was free from contributory negligence through testimony directed to respective reputations for careful habits. Defendant objected upon the ground that such evidence must concern and relate to habits of care, rather than reputation as to such. This objection was overruled. Defendant had the same burden of proof upon his counterclaim for the death of Rosemary Nale. The witnesses called by the defendant were asked concerning care in the observed driving habits of the decedent. Plaintiff objected to the

questions and stated that the testimony must be directed to reputation in the community. The report of proceedings shows a conference off the record, and defendant thereafter framed questions and received answers in terms of the reputation of Rosemary Nale as to driving habits.

The authorities in Illinois support the conclusion that the trial court erred in overruling the defendant's objection to testimony establishing the reputation of plaintiff and plaintiff's decedent as to habits of due care. The ruling stated in summary in Gard, Illinois Evidence Manual, § 104:

> "As distinguished from reputation for care or lack of care, which is not admissible, evidence of habit may be relevant and admissible on the issue of negligence as a basis for an inference that the conduct in question conformed to the habit."

Illinois Pattern Instruction, § 10.08 expressed the rule as: ". . . evidence tending to show that the decedent was a person of careful habits. . . ." See also Cleary, Handbook of Illinois Evidence, 1st Ed, § 7.14.

■■ Habits of care are matters of specific conduct and acts while reputation relates to the community estimate or conclusion concerning an individual. In civil cases it may be stated in brief that evidence of reputation is not admissible except in those instances where reputation itself is in issue. Handbook of Illinois Evidence, 1st Ed, §§ 7.4–7.6. In Hughes v. Wabash R. Co., 342 Ill App 159, 95 NE2d 735, the witnesses testified to the observed practices of the decedent in driving. In Ingle v. Maloney, 234 Ill App 151, the testimony offered concerned habits of care as observed by witnesses. See also the cases listed in Lobravico v. Checker Taxi Co., Inc., 84 Ill App2d 20, 228 NE2d 196.

Only two cases are cited by defendant and an extensive albeit not all-inclusive examination of the reported opinions of our courts disclose but two instances in which

241

the opinion referred to reputation of habits of due care. In Illinois Cent. R. Co. v. Prickett, 210 Ill 140, 71 NE 435, the decedent was the engineer of a travelling locomotive which exploded. In speaking of the evidence in terms of the reputation of the engineer for careful habits, the court cited Illinois Cent. R. Co. v. Nowicki, 148 Ill 29, 35 NE 358; and Chicago B. & Q. R. Co. v. Gunderson, 174 Ill 495, 51 NE 708. In neither case was there reference to habits of care in terms of reputation. In Thompson v. City of Bushnell, 348 Ill App 395, 109 NE2d 346, there was, again, an explosion when the city permitted gas to leak into the sewers and such gas, which had accumulated in decedent's basement, exploded when he lighted papers in his furnace. The opinion does not show that objection was made at the trial to evidence concerning decedent's reputation as to habits of care and caution. Upon appeal it was argued that the inference of due care must be drawn from evidence of habits, but the court held that there was no reversible error.

Except as to a few individuals in specialized activities it is doubtful that it would be possible to establish habits of due care in relation to major explosions. At any rate, cases of explosions arising under uncommon circumstances are certainly distinct and different from the usual and frequent acts incident to motor travel where habits of care under constantly changing circumstances may be observed.

Since courts seek evidence of the highest probative value available, it is readily apparent that reputation for habits of care, which may arise from an absence of information or knowledge, is of slight significance or assistance as compared with observed instances of specific conduct of such regularity as to constitute and demonstrate habit. In this case it is to be noted that one witness testifying to plaintiff's reputation had never ridden in a car driven by him, while the second had ridden with

him but once some two years before on a trip to the county fair.

 It is necessary to decide whether, under the circumstances of this case, the error in admitting evidence of reputation as to habits of care requires reversal and remandment. While defendant objected to the testimony first offered, no motion to strike it from the record has been pointed out and we have found none in the abstract. Each party had the same burden of proof upon the identical issue. One purpose of evidence as to habits of care as an exception to the general rule in civil cases is to make available such evidence of freedom from contributory negligence as would meet the traditional element of the cause of action and avoid a directed verdict. Each party here presented sufficient evidence to present the case to the jury. We find neither cross-examination nor offer of proof which suggests any attempt to impeach the evidence of habit offered in behalf of the plaintiff or defendant's decedent.

Upon a careful consideration of the facts and issues presented here, we conclude that the point argued by defendant has merit, but that under the circumstances the court's ruling did not operate to cause such prejudice to the issues presented to the jury, or to the procedure of the trial as to require reversal.

The defendant urges that the court erred in admitting into evidence testimony so remote as to time and distance as to be inadmissible. The three witnesses whose testimony is in issue were acquaintances and contemporaries of Rosemary Nale. They were together, driving about Westville, and they observed Miss Nale leave a friend and drive away in her car. The witnesses casually followed her for several blocks, during which time she was observed to be driving on the highway in the direction of her home in Georgetown. This was the highway upon which the collision occurred.

There is no controversy as to the identity of the Nale car seen in Westville and the car involved in the collision, as in Schneider v. Wedding, 66 Ill App2d 7, 213 NE2d 624. The witnesses ultimately drove to the scene and observed the Nale car.

One witness testified that Miss Nale was first seen between 12:20 and 12:30 a. m. Two witnesses estimated the time as between 12:00 and 12:30 a. m. These witnesses, after making such observation, drove about Westville and met and talked with an acquaintance. Two of the witnesses estimate that some twenty minutes elapsed between the time of observing Miss Nale travel south and seeing the police car travelling in a southerly direction. The third witness stated that there was conversation for about thirty minutes and that the police car was seen in the latter part of the thirty minutes. The report of the collision was received by the sheriff at 12:40 a. m., so that the observation of the police car was several minutes thereafter.

Upon the argument of the admissibility of the testimony the court stated that it would be admitted in light of the fact that no other evidence was available. At issue is the relevance of the evidence admitted, i. e., the reasonableness of the tendency to prove a material fact. Gard, Illinois Evidence Manual, Rule 81. In the Comment to such Rule, it is pointed out that remoteness in point of time does not necessarily make the evidence irrelevant unless the degree of remoteness is such that it negatives any logical connection with the fact sought to be proven.

Consistent with the testimony of these witnesses, the record contains evidence which the jury could consider, and from which it could infer that the course of travel of the Nale car continued southward. Miss Nale was some 19 years of age and resided with her parents in Georgetown. The witnesses observed that her social engagement appeared to be concluded, and that she was

alone some five miles from her home on a stormy winter night. The jury had an opportunity to consider the defendant's argument that there were places where she might turn around and again proceed north in light of this evidence concerning such circumstances.

■ The cases in which evidence of driving has been excluded as remote usually concern acts of the driver which can be changed innumerable times within a short span of time and distance, as where a vehicle is driven with a wheel over the center line. Flesberg v. Prince Warehouse Co., Inc., 37 Ill App2d 22, 184 NE2d 813; Hanck v. Ruan Transp. Corp., 3 Ill App2d 372, 122 NE 2d 445, or there is evidence of speed which may quickly be altered or interrupted. Rzeszewski v. Barth, 324 Ill App 345, 58 NE2d 269; Denton v. Midwest Dairy Products Corp., 284 Ill App 279, 1 NE2d 807. The trial court, however, has the discretion to admit evidence where the facts and circumstances support a reasonable inference that the conduct continued from the point of observation to the place of collision. Cooper v. Cox (speed), 31 Ill App 2d 51, 175 NE2d 651; Driessens v. Verkruyse (speed), 46 Ill App2d 87, 196 NE2d 353. In Ryan v. C & D Motor Delivery Co., 38 Ill App2d 18, 186 NE2d 156 (Abst), there were no eyewitnesses. It was there held that the trial court had the discretion to admit testimony that the decedent was observed driving erratically for a distance of four miles to a point within one mile of the place of collision.

■ This case differs in that the evidence at issue does not purport to relate to specific acts of negligence alleged to be the cause of the collision. It does contradict or raise doubt as to defendant's theory that the Nale car was being driven north on the highway at the time of the collision. The case must be decided in the absence of eyewitnesses. The direction of travel followed by Rosemary Nale might possibly have been reversed, but such course of travel is not clearly subject to in-

numerable changes within the span of time and distance which is in evidence. Under the facts and circumstances it is not unreasonable to infer that the Nale car continued to travel south and the testimony does have probative value and relevance. Hence, we cannot say that there was an abuse of discretion by the trial court which constituted error.

The judgment is affirmed.

SMITH and CRAVEN, JJ., concur.