THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
NATHAN L. WARD, Defendant-Appellant.

Second District   No. 2—88—1272

Opinion filed January 25, 1990.—Rehearing denied March 6, 1990.

Douglas R. Roberts, of Law Offices of Douglas R. Roberts, of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Nathan L. Ward, was indicted in the circuit court of Lake County on four counts of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(1)) and six counts of armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2) predicated on aggravated battery. The four aggravated battery counts were nol-prossed prior to

trial. Following a jury trial, defendant was found guilty of six counts of armed violence and was sentenced to concurrent terms of imprisonment of 21 years on each count.

The only issue presented by defendant on appeal is whether the trial court erred in barring him from bringing an individual physically before the jury and certain witnesses for the purpose of comparing that individual's appearance with his own.

Evidence adduced at trial establishes the following facts. On March 2, 1988, at approximately 9:15 p.m., following a basketball game at Waukegan East High School, an individual fired several shots from a handgun into a crowd assembled in the parking lot. Four persons were struck by bullets. Steven Gonyo, an officer with the Waukegan police department, was on duty at the scene at the time of the incident. As he was approaching a crowd of 125 to 150 persons in the school parking lot, he heard shots from the area of the crowd. Gonyo took cover behind a parked car. Gonyo testified that after the third shot, he peered over the car and saw the crowd in the parking lot moving away from an individual standing in a crouched stance, holding a pistol in his right hand and waving it back and forth. Gonyo was about 70 yards from the individual, whom he described as a black male of medium stature, 5 feet 10 inches to 5 feet 11 inches tall, with short black hair combed straight back. According to Gonyo, the individual was wearing a dark leather jacket with gray speckles on the sleeves and jeans. The area was well lit.

The individual and three or four other persons standing near him ran from the parking lot, and Gonyo followed them. He lost sight of the group at some point but later sighted the same group with the individual he had seen fire the gun. Gonyo chased the individual, who was apprehended near the corner of Clark and Besley Streets by Maurice Rodriguez, a Waukegan East High School security guard, who had been in the parking lot when the shots were fired. Rodriguez arrived at Clark and Besley in a car driven by Lawrence TenPas, a Waukegan East High School teacher. The individual apprehended was defendant, whom Officer Gonyo identified in court as the same person he described as holding a pistol, whom he chased, and whom he apprehended and handcuffed.

Anthony Davis, who was struck in the arm by a bullet, identified defendant in court as the person who fired shots in the parking lot. Davis testified that he was about 15 feet from defendant when he began shooting. According to Davis, defendant was wearing a black jacket, blue jeans and a green shirt. When interviewed by police following the shooting, Davis stated that he could not identify the per-

son who shot him. Davis testified, however, that he lied to police because he was scared. He did not know at the time the name of the person who shot him but had seen him around school. On cross-examination, Davis stated that he got the idea that defendant had shot him when talking to prosecutors and that people around school were saying defendant was responsible for the shooting. According to Davis, Gene Gwinn told him defendant's name.

Ernest Gwinn received a bullet wound to his finger. He testified that he did not see who shot him, although he had seen defendant in the parking lot after the game and heard someone say he had a gun.

Two other witnesses to the shooting, Michael Davidson and Nigel Patrick, both high school students, identified defendant as the person they saw fire a gun into the crowd in the parking lot. Davidson and Patrick knew defendant by name and observed him from about 30 feet at the time of the shooting.

Lanny Smith saw a person shooting a gun. While he could not identify who it was because the lighting caused a shade over his face, he did identify the leather jacket with gray sleeves worn by defendant that night and the Nike hat found near where defendant was chased and apprehended as being worn by the person with the gun.

Lawrence TenPas saw a person come out from the crowd and fire a gun several times. The person wore a leather jacket which he later identified in court. This was the leather jacket worn by defendant at the time of his arrest. He chased the person who was subsequently apprehended.

A bullet was recovered from the jacket of Valerie Coburn, who was shot in the arm. It was determined that the bullet was fired from a Smith and Wesson .38 caliber revolver discovered at 308 Powell Street, near where defendant was apprehended. A Nike hat was also found in the area where defendant was chased by Officer Gonyo.

The defense presented the testimony of Aubrey O'Bryant and Otis Bledsoe, who testified that they had been with defendant prior to the basketball game. According to their testimony, the three had been at O'Bryant's house drinking beer prior to going to the game. O'Bryant testified that he did not see defendant with a gun at any time, nor did he find a gun when he took defendant's coat while at the house. After leaving for the game, they stopped first at defendant's house so defendant could get some money. O'Bryant was not with defendant later when the game was over. He heard shots fired after the game but did not see who did the shooting. Bledsoe said he saw defendant after the game in the parking lot. Defendant did not fire the shots, but someone else did whom he could not identify.

Defendant testified that he did not have any weapon with him when he went to the basketball game. When he, O'Bryant, and Bledsoe arrived at the game, defendant observed Lorenzo Brooks standing outside on the stairs. O'Bryant, Bledsoe, and he separated once inside the gymnasium. After the game, defendant eventually joined a group of people in the parking lot while waiting for O'Bryant and Bledsoe. According to defendant, Lorenzo Brooks joined the group. Thereafter, a group of people from Waukegan began to form and approached defendant's group. At that point, according to defendant, Brooks fired a pistol at the other group. Defendant was no more than five feet from Brooks when Brooks began shooting. Brooks was dressed in dark clothing. Defendant ran from the parking lot. Brooks also ran and passed defendant.

Defendant met up with a group of people, including Brooks, at the corner of Clark and Victory. A car approached and someone in the car said, "[t]here he is." Defendant proceeded to run and, after being chased by a police officer, was tackled by an individual who had driven up in the car defendant had seen at Clark and Victory.

Defendant subpoenaed Lorenzo Brooks, who was in custody in the Lake County jail apparently for reasons unrelated to the incident on March 2, 1988. During a hearing on motions *in limine* just before trial began, Lorenzo Brooks' attorney stated that Brooks would be invoking his right against self-incrimination. Defendant's attorney indicated that he intended to bring Brooks into the courtroom for the purpose of having him identified by defense witnesses as the person who committed the shooting and would not call him to testify. Both Brooks' attorney and the State contended that this would violate Brooks' right against self-incrimination. The State additionally contended that an individual cannot be subpoenaed merely for his presence, if he is not to be called to testify. The trial judge ruled that defendant would only be able to admit a photograph of Brooks into evidence and ordered the State to provide a photograph. The State provided a photograph of Brooks' face and facial profile which was shown to certain defense witnesses and admitted into evidence.

Defendant contends that it was error to prohibit him from bringing Lorenzo Brooks before the jury and witnesses in support of the theory that defendant was mistaken for Brooks, the actual perpetrator of the offense. He argues that he has a right to show that someone else committed the offense and that the person of Brooks could properly be used as evidence.

The State initially appears to argue that the trial court ruled correctly because compelling Brooks to appear before the jury for the

purpose of being identified or compared with defendant would violate Brooks' privilege against self-incrimination. In *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, the United States Supreme Court held that "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." (384 U.S. at 761, 16 L. Ed. 2d at 914, 86 S. Ct. at 1830; see *People v. Moore* (1969), 43 Ill. 2d 102, 107, 251 N.E.2d 181.) Brooks' mere appearance before the jury would not have involved testimonial or communicative evidence. "[T]he compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination." (*United States v. Dionisio* (1973), 410 U.S. 1, 5-6, 35 L. Ed. 2d 67, 74, 93 S. Ct. 764, 767.) Compelling Brooks to appear before the jury would not violate his fifth amendment rights.

The State also responds that because the jurors heard testimony from both sides and saw photographs of both defendant and Brooks, the physical presence of Lorenzo Brooks was neither relevant nor necessary.

We have found no case law in Illinois addressing the issue of compelling a person to appear at trial in a criminal case for the purpose of displaying the witness before the jury and witnesses to show similarity between the witness and the defendant to support a defense of mistaken identity. However, a similar issue was considered in an opinion of a New York trial court in *People v. Diaz* (1981), 111 Misc. 2d 1083, 445 N.Y.S.2d 888. In that case, the defendant, charged with murder, asserted during trial that another individual, Miguel E., had committed the offense. The defendant asserted that Miguel E. more closely fit the description of the perpetrator given to police by eyewitnesses. Miguel E. refused to testify, invoking his fifth amendment right against self-incrimination. However, the prosecution sought to introduce Miguel E. so that the jury could consider whether he resembled the description of the perpetrator.

The court noted the dearth of authority on the issue, but stated that "[i]n researching this issue, it becomes apparent that the traditional law of real or demonstrative evidence is applicable." (111 Misc. 2d at ___, 445 N.Y.S.2d at 889.) The court further stated that "the practice of introducing a person into evidence for the purpose of permitting the jury to see for itself whether he more closely resembles the perpetrator than does the accused, follows traditionally accepted procedure governed by the law of 'real evidence.' " (111 Misc. 2d at ___ , 445 N.Y.S.2d at 891.) Accordingly, the trial court permitted the

prosecution to introduce a person as an exhibit as evidence relative to the issue of identification.

■ We agree with the reasoning in *Diaz* and hold that introduction of a person as evidence relative to identification in a criminal case is governed by the principles generally applicable to the admission of evidence. The propriety of admitting evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion. (*People v. Bowel* (1986), 111 Ill. 2d 58, 68, 488 N.E.2d 995.) " 'The basic principle that animates our law of evidence is that what is relevant is admissible.' " (*People v. Monroe* (1977), 66 Ill. 2d 317, 321, 362 N.E.2d 295, quoting *People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 293, 139 N.E.2d 780.) Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (*Monroe*, 66 Ill. 2d at 322, 362 N.E.2d at 297; see also *People v. Johnson* (1986), 114 Ill. 2d 170, 193, 499 N.E.2d 1355.) Relevancy is established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable. *People v. Free* (1983), 94 Ill. 2d 378, 413, 447 N.E.2d 218.

■ Clearly, the identity of the perpetrator of the offenses at issue is relevant. Nevertheless, defendant here must establish that the person of Lorenzo Brooks is relevant so that displaying him before the jury and the witnesses would tend to make it more probable or less probable that defendant was the perpetrator than it would be without the evidence. We recognize that under some circumstances the person sought to be introduced will not be shown to be sufficiently connected with the incident or similar to a defendant in appearance as to render him relevant to the issue of a defendant's identification. In this regard, we believe defendant under the circumstances here should have made a threshold showing outside the presence of the jury that Brooks would be identified by a witness as the person who fired the shots and that there was in fact a substantial similarity in appearance at the time of the incident in question between defendant and Brooks. While defendant satisfied the first requirement by representing to the court prior to trial that a witness would identify Brooks as firing the shots, as defendant subsequently testified at trial, the second part pertaining to a showing of similarity of appearance was not squarely addressed by defendant or by the trial court. The record does not show that Brooks was brought before the court for this determination. The party offering evidence must establish its relevancy. Nevertheless, the trial court, while denying the use of the person of Brooks

as an exhibit, did allow a photograph of Brooks to be allowed into evidence. Comparison of the photograph of Brooks and photographs of defendant allowed into evidence, however, fails to establish similarity of appearance except that both are young, black males. Under these circumstances, we find no abuse of discretion in not allowing defendant to display Brooks to the witnesses and to the jury.

Even were we to find an abuse of discretion in the barring of this evidence, we would find this error to be harmless beyond a reasonable doubt. (See *People v. Young* (1989), 128 Ill. 2d 1, 42, 538 N.E.2d 453.) There was substantial evidence of defendant's guilt through the positive identification of him by several witnesses and by other persons who identified him through the clothing he wore. (*People v. Broadnax* (1988), 177 Ill. App. 3d 818, 834-35, 532 N.E.2d 936.) Moreover, he was allowed to enter into evidence and use before the witnesses and the jury a photograph of Brooks which arguably supported his defense that Brooks committed the offenses. In light of the overwhelming evidence of defendant's guilt, the exclusion of this evidence was harmless error. See *People v. Shannon* (1986), 149 Ill. App. 3d 525, 531, 501 N.E.2d 166.

■ While not raised by defendant, we find from the record that, with respect to Anthony Davis and Valerie Coburn, defendant was charged and convicted of two counts of armed violence against each victim under separate theories of the predicate offense encompassed in section 12—4(a) (causing great bodily harm) and section 12—4(b)(8) (person battered is on public property) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), (b)(8)). Accordingly, with respect to the shooting of Davis and Coburn, in each case multiple convictions arose from a single act, and we vacate the convictions of armed violence on counts I and II of the indictment. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838.

The judgment of the circuit court of Lake County is affirmed in part and vacated in part.

Affirmed in part; vacated in part.

McLAREN and WOODWARD, JJ., concur.