JACK SPENCER, Plaintiff-Appellee, v. JOSEPH WANDOLOWSKI *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—92—0749

Opinion filed May 10, 1994.—Rehearing denied July 21, 1994.

612

SCARIANO, J., dissenting.

Stevenson, Rusin & Friedman, Ltd., of Chicago (Gregory G. Vacala, of counsel), for appellants.

Edmund J. Scanlan, Ltd., of Chicago (Edmund J. Scanlan and Richard C. Gleason, of counsel), for appellee.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:
Plaintiff Jack Spencer brought this action, alleging that defendant Joseph Wandolowski, while operating a semitrailer truck owned by codefendants Always Air Freight Forwarders, Inc., and SMK Transportation, Inc.,[1] injured plaintiff when defendant Wandolowski negligently changed lanes on the feeder ramp connecting northbound Interstate 55 (the Stevenson expressway) and westbound Interstate 94 (the Dan Ryan expressway). A jury found for plaintiff and determined his damages to be $609,111, but reduced the award in half due to plaintiff's contributory negligence. Defendants appealed.

At trial, the following evidence was presented. Plaintiff, a full-time Chicago fireman and part-time Chicago public school teacher, testified that on June 11, 1986, he left his home at 4401 South St. Louis on his motorcycle at about 6:15 a.m. He was scheduled to arrive at his place of employment at the fire station, located at 4911 West Belmont Avenue, by 8 a.m., but he usually reached there between 7 and 7:30. From his home, he drove to Kedzie Avenue and then proceeded north to the Stevenson expressway. He traveled northbound on the expressway at about 40 miles per hour until he reached the feeder ramp leading to the westbound Dan Ryan expressway.

Plaintiff stated that the feeder ramp divides into two lanes and is about four blocks long before it eventually merges with the Dan

---

[1]All defendants concede their common liability under the theory of respondeat superior.

Ryan expressway. He explained that there is no room to the right of the right lane for any vehicle, even a motorcycle, to pass another vehicle proceeding in the right lane. Where the ramp divides into two lanes, plaintiff testified that he moved into the right lane of the ramp while traveling at approximately 30 miles per hour, and that the traffic congestion at this point (about 7:05 a.m.) was "medium." He observed a semitrailer truck a few blocks ahead in the left lane, and he eventually drew even with it about a block from the end of the ramp. As traffic slowed in the left lane, the truck began to veer into the right lane without putting on its turn signal. The middle of the trailer portion of the truck struck his left shoulder, causing him to crash into the curb and bounce back into the trailer. He then flew over the handlebars onto the pavement, and the truck ran over his left leg as it continued to proceed into the right lane.

As plaintiff was lying in pain on the ground, he tried unsuccessfully to kick off his left boot. An Illinois Department of Transportation minuteman arrived on the scene a short time later, and still later a nurse also came and cut off his boot. Eventually, both Wandolowski and Illinois State Trooper Kim Rhodes arrived at the scene, but plaintiff did not remember speaking to either of them. He was then taken by ambulance to Mercy Hospital, where he was treated for several fractures in his left ankle.

Plaintiff further testified that as a result of the fractures, he still has difficulty walking, running, and carrying heavy objects. He also has severe scarring on his left calf due to two skin grafts which were performed in order to replace skin that had been torn off in the accident. Plaintiff also stated that he had consumed three 12-ounce cans of beer at about 6 p.m. on the day before the accident.

Douglas Dirk Nelson, M.D., in testifying on plaintiff's behalf, stated that he treated plaintiff on June 11, 1986, for fractures of his left ankle and fibula. Dr. Nelson reset the fractured bones, inserted a metal plate and some screws to secure them, and placed plaintiff's leg in a cast. He also performed two skin grafts on plaintiff's left calf which left a permanent scar. Dr. Nelson determined that plaintiff lost approximately 50% of his ability to raise his left foot and 40% of his ability to push down on it as a result of the accident. Consequently, in his opinion, plaintiff's ability to walk and run will be impaired for the remainder of his life. Dr. Nelson also stated that plaintiff's injury caused him pain at the time of the occurrence and will continue to do so for the indefinite future.

Plaintiff's next witness was Steven Funkhouser, who testified that at about 7 a.m. on June 11, 1986, he was returning home from the south side of Chicago when he entered the northbound Stevenson

expressway at Pulaski Road. He was traveling at approximately 40 or 45 miles per hour on the northbound Stevenson expressway when he approached the feeder ramp to the westbound Dan Ryan expressway. As soon as he entered the two-lane portion of the ramp, he observed a semitrailer truck in the left lane and a motorcycle beside it in the right lane. When traffic congested in the left lane, he slowed to about 25 miles per hour as he approached to within 100 feet of the truck. Since he was in a hurry, he decided to move into the right lane. Just as he was about to do so, however, he saw the truck, without signalling, begin to move into the right lane. He then slowed, reasoning that the truck driver would eventually notice the motorcycle to his right and reenter the left lane. The truck continued to switch lanes, however, and the trailer portion struck plaintiff, knocking him off his motorcycle. Plaintiff was then run over by the rear wheels of the truck.

Funkhouser testified that he was in a hurry to get home because a female friend was waiting at his house and he intended to take the day off. His employer's time sheet, however, showed that he worked eight hours that day. Because he was in a hurry, Funkhouser did not stop at the scene of the accident, but proceeded instead onto the Dan Ryan expressway toward his home on the north side of Chicago. Plaintiff later became aware of the fact that he had witnessed the accident on trial through the circumstance of his relating the event, at a bachelor party sometime in 1988, to Charlie Bliss, who worked at the same firehouse with plaintiff and was a mutual friend of his and plaintiff's. Funkhouser further testified that he was subsequently contacted by an investigator hired by plaintiff's attorney, that he did not know plaintiff at the time of the accident, and that he had met him after the incident briefly only once or twice through Bliss.

Defendant Wandolowski testified, both as an adverse witness and on his own behalf, that at the time of the accident, he had worked for codefendants for approximately five years and drove the same route five times each week for three of those years. On the morning of June 11, 1986, he was on the final leg of his route, heading from R.R. Donnelley & Sons Co. at 21st Street and Martin Luther King Drive in Chicago to Elk Grove Village. At about 6:50 a.m., he left R.R. Donnelley and entered the feeder ramp to the northbound Dan Ryan at the intersection of 22nd Street and King Drive.

When he entered the ramp from King Drive, he proceeded immediately into the right lane, traveling slowly down the ramp in the bumper-to-bumper traffic, never leaving the right lane. Although the guard rail was only six inches from the right edge of the lane, whether there was enough room for a motorcycle to pass him on the shoulder depended on the position of the truck in the lane. He

explained that he typically would keep his truck to the left side of the right lane when he was on the feeder ramp because he did not like to look down over a bridge.

Suddenly, while he was stopped in traffic about a block away from the ramp, someone jumped up onto the passenger side of his truck, knocked on the window, and told him that he had been involved in an accident with a motorcycle. He then put on his parking brakes, turned on his hazard lights, and walked up the ramp where he saw plaintiff lying on the pavement. He approached plaintiff in order to determine whether he was hurt badly. When he did so, he smelled alcohol on his breath, noticed that his eyes were bloodshot, and recognized that his speech was slurred. Based on these facts, he believed that plaintiff was intoxicated.

Sergeant Kim Rhodes testified for defendants that on June 11, 1986, she was a State trooper who usually worked in Effingham, Illinois, but on that day she was on special patrol duty in Chicago. She was on the Stevenson expressway that morning in an unmarked car, and traffic had been stop-and-go thereon since about 6 a.m. At about 7:25, while proceeding in the left lane, she received an emergency call informing her that an accident had occurred on the feeder ramp to the Dan Ryan expressway. She proceeded there immediately, but because traffic was heavy, it took her approximately two to five minutes to travel the short distance, despite the fact that her siren was "blaring."

Upon arriving at the scene, she noticed plaintiff sprawled on the pavement in the right lane of the ramp and a semitrailer truck parked up ahead with its emergency lights flashing. As she tended to plaintiff, she noticed a strong odor of alcohol, although she was not positive as to its source. When she went to the hospital in order to question plaintiff, she once again smelled alcohol, which led her to think that plaintiff had been drinking at some time prior to the accident. She could not, however, formulate an opinion as to whether or not he was intoxicated, primarily because it was not feasible for her to perform the standard field-sobriety tests. She did opine, however, that his blood-alcohol content was probably below the statutory limit of 0.10.

After hearing final arguments, the jury found in plaintiff's favor in the amount of $609,111.00,[2] but also determined that plaintiff was 50% comparatively negligent and reduced his award to $304,555.50.

---

[2]Specifically, the jury found that plaintiff incurred $370,000 in damages for disability and disfigurement; $200,000 for pain and suffering; $23,278 for medical expenses; and $15,833 for lost earnings.

Thereafter, defendants filed a post-trial motion seeking a new trial based on newly discovered evidence. In support of their motion, defendants presented the affidavit of plaintiff's wife, Mary Spencer, which alleged that plaintiff had told her on several occasions that the accident in question had occurred because he had tried to pass the truck on the right shoulder because he was in a hurry to get to work that morning, and that he had been out drinking the entire previous evening. The affidavit also stated that plaintiff told her that nobody had witnessed the accident and that he and Funkhouser were in fact good friends. Finally, it stated that she was in the process of divorcing plaintiff, that he had threatened her life if she told anyone what he had told her about the incident, and that she had not come forward previously because she was in fear for her and her children's lives. The circuit court denied the motion and entered judgment on the verdict.

On appeal, defendants seek a new trial contending that the circuit court (1) improperly denied their motion for a directed verdict; (2) erred by not requiring plaintiff's attendance at trial; (3) abused its discretion by prohibiting their expert from testifying that plaintiff's blood-alcohol content was 0.096 three hours after the accident without first providing retrograde extrapolation testimony to demonstrate that his blood-alcohol content was above 0.10 at the time of the occurrence; (4) improperly excluded evidence that an unsealed, two-thirds-empty bottle of vodka was found in the saddlebag of plaintiff's motorcycle; (5) inappropriately limited redirect examination of Rhodes regarding her normal course of conduct when she believed that someone was intoxicated but below the 0.10 level; (6) mistakenly barred evidence of plaintiff's driving along the right shoulder moments before the accident as too remote; (7) failed to instruct the jury on defendants' theory of the case; and (8) erroneously denied their motion for a new trial based on the newly discovered evidence. Because we agree that the circuit court erred in excluding evidence of plaintiff's driving shortly before the accident, we reverse and remand for a new trial.

Defendants assert that the circuit court improperly barred the proffered testimony of Sergeant Rhodes wherein she would have stated that prior to the accident, from her position in the left lane of the Stevenson expressway, she observed plaintiff traveling at least 40 miles per hour on the right shoulder of the Stevenson expressway, passing "stop and go" rush hour traffic. She would have further testified that because of the combination of her position and the traf-

fic conditions, it was not possible for her to apprehend plaintiff, but shortly after observing plaintiff, she received a radio call informing her of an accident on the feeder ramp involving a motorcycle, and that because of the heavy traffic, it took her several minutes to reach the accident scene. In excluding this evidence, the court stated that it would not determine the witness' credibility, but rather found "as a matter of law what [Rhodes] observed ten minutes beforehand is not probative as being too remote as to what occurred at the time of this impact." We cannot agree with the circuit court.

As one commentator has noted:

> "The law of evidence presupposes that in judging the claims of litigants, it is important to discern the true state of affairs underlying the dispute. In pursuing this objective, it proceeds on the premise that the way to find the truth is to permit the parties to present to the court or jury all the evidence that bears on the issue to be decided." (1 J. Strong, McCormick on Evidence § 184, at 772 (4th ed. 1992).)

Consistent with this purpose, our courts have repeatedly stated that " '[t]he basic principle that animates our law of evidence is that what is relevant is admissible[;] [e]xceptions to that principle must justify themselves.' " (*People v. Monroe* (1977), 66 Ill. 2d 317, 321, 362 N.E.2d 295, 296, quoting *People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 293, 139 N.E.2d 780, 783; *People v. Brewer* (1993), 245 Ill. App. 3d 890, 894, 615 N.E.2d 787, 790; *People v. Ward* (1990), 193 Ill. App. 3d 677, 682, 550 N.E.2d 576, 580.) Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Fed. R. Evid. 401; see also *In re Elias* (1986), 114 Ill. 2d 321, 334, 499 N.E.2d 1327, 1332; *Monroe*, 66 Ill. 2d at 322, 362 N.E.2d at 297 (adopting the Federal definition for purposes of Illinois law).) This definition of relevancy encompasses the materiality of evidence as well as its probative value. *Elias*, 114 Ill. 2d at 334, 499 N.E.2d at 1332.

Materiality, or "fact of consequence" as it is referred to in the Federal rules, refers to the relationship a particular proposition bears to the ultimate determination of the action. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 401.1, at 128 (5th ed. 1990).) Probative value, on the other hand, refers to the tendency of the evidence to render a particular proposition more or less probable than it would be without the evidence, and is determined by testing the proffered fact against "the light of logic, experience and accepted assumptions as to human behavior." *Marut v. Costello* (1966), 34 Ill. 2d 125, 128, 214 N.E.2d 768, 769.

■ We have often considered the question of whether the prior driving of a party involved in an accident is relevant to what happened at the site of the collision. Generally, "courts will admit evidence of what a party was doing prior to an accident depending on the degree to which [it] 'tends to show what actually or most probably occurred at the time of the [accident].' " (*Galowich v. Beech Aircraft Corp.* (1991), 209 Ill. App. 3d 128, 135, 568 N.E.2d 46, 50, *appeal denied* (1991), 141 Ill. 2d 539, 580 N.E.2d 112, quoting *Klavine v. Hair* (1975), 29 Ill. App. 3d 483, 487, 331 N.E.2d 355, 358.) Such evidence is admissible if the proffered testimony identifies the vehicle as the one involved in the accident or leads the jury to reasonably infer that it was the same vehicle (*Schneider v. Wedding* (1965), 66 Ill. App. 2d 7, 12, 213 N.E.2d 624, 626-27), and if " 'the facts and circumstances support a reasonable inference that the conduct testified to continued from the point of observation to the place of the [accident].' " (*Galowich*, 209 Ill. App. 3d at 135, 568 N.E.2d at 50, quoting *Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 600, 418 N.E.2d 980, 985.) Each case must be determined on its own set of facts (*Wassman v. Ritchason* (1978), 63 Ill. App. 3d 770, 778, 380 N.E.2d 1022, 1028), and circumstantial evidence may "take[ ] on more importance where there are no available eyewitnesses, or where it may be the only method by which it may be shown who was at fault." *Klavine*, 29 Ill. App. 3d at 488, 331 N.E.2d at 358.[3]

In *Klavine*, the plaintiff, as administrator of the decedent's estate, brought a wrongful death action against the defendants whose negligence allegedly caused an automobile accident which resulted in Randall Klavine's death. (*Klavine*, 29 Ill. App. 3d at 484-85, 331 N.E.2d at 356.) The jury found for the defendants on the ground that Klavine was contributorily negligent. (*Klavine*, 29 Ill. App. 3d at 485,

---

[3]While we agree that it is proper for circuit courts to consider whether eyewitness testimony is available as a factor in determining whether to admit evidence of conduct prior to an accident, we disagree with the rule advanced in *Galowich* that evidence of prior conduct is admissible only in the absence of eyewitness testimony. (*Galowich*, 209 Ill. App. 3d at 137, 568 N.E.2d at 51.) We believe that the court in that case overstated the rule set forth in *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12, which did not allow reconstruction evidence to be introduced where eyewitness testimony was presented. Clearly, the "*Plank*" rule cannot be applied so as to preclude a party from challenging eyewitness testimony with relevant circumstantial evidence. *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 924, 404 N.E.2d 265, 270 ("Circumstantial evidence is competent evidence and may be used to contradict positive eyewitness testimony on a fact in a lawsuit").

331 N.E.2d at 358.) On appeal, plaintiff contended that the circuit court improperly excluded the testimony of a witness who had observed the plaintiff's vehicle traveling at a "leisurely" pace approximately 600 yards from the accident. (*Klavine*, 29 Ill. App. 3d at 488, 331 N.E.2d at 358.) The appellate court held that the circuit court erred in finding the proffered testimony was too remote because it was "sufficiently relevant under the particular facts and circumstances" of the case. (*Klavine*, 29 Ill. App. 3d at 488, 331 N.E.2d at 358.) Because the testimony could have affected the jury's finding on the issue of contributory negligence, the court remanded the cause for a new trial so that a jury could determine the appropriate weight and value of the testimony. *Klavine*, 29 Ill. App. 3d at 488, 331 N.E.2d at 358.

In the instant case, the circuit court, as did the circuit court in *Klavine*, found that Rhodes' proposed testimony regarding her observations was "too remote" from the accident to be relevant to the issue at hand. We do not agree. Although the circuit court's finding is entitled to deference, it was improper to exclude evidence so central to defendants' theory of the case and so consistent with the totality of the evidence. See *O'Brien v. Hertl* (1992), 238 Ill. App. 3d 217, 223, 606 N.E.2d 225, 229 (stating that "[e]ach party is entitled to present evidence which is relevant to his theory of the case, as well as evidence which tends to show conduct inconsistent with his opponent's theory"); *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 982, 466 N.E.2d 958, 966 (same).

At trial, defendants' theory was that plaintiff, in a hurry to get to work on the northwest side of the city, tried to bypass the congestion on the feeder ramp by passing Wandolowski's truck on the right. Consistent with that theory, defendants presented evidence at trial that traffic was very heavy and slow at the time of the incident. Wandolowski testified that traffic was bumper-to-bumper, a fact corroborated by someone's ability to get on his running board to tell him about the accident. Likewise, Rhodes stated that because of traffic conditions, it took her several minutes to reach the accident scene despite using her emergency lights and siren. Plaintiff and Funkhouser flatly contradicted this evidence by stating that traffic was proceeding at approximately 40 miles per hour on the Stevenson, and 25 to 30 miles per hour on the ramp. Thus, Rhodes' proposed testimony, about her observations and about the fact that, because of traffic congestion, she was unable to stop plaintiff, was logically relevant in that it was highly probative of the prevailing traffic conditions, to say nothing about plaintiff's actions temporally and geographically close to the accident. Furthermore, the excluded evidence was material in that it

went directly to the cause of the collision. Nor was the probative value outweighed by its prejudicial effect, because the evidence was thoroughly consistent with defendants' theory of the case and it could have substantially affected the jury's ability to determine negligence or the appropriate degree of plaintiff's comparative negligence.

There is no basis in the record to support the circuit court's finding, relied upon by the dissent, that 10 minutes elapsed between the time of Rhodes' observations and the accident. Rather, the record shows that there was a 10-minute lapse between Rhodes' observations and her receipt of the *report* informing her of the accident. Thus, the actual time period between her first observation of plaintiff and the time of the accident had to have been shorter. Before Rhodes could have received the report, a witness had to report the accident to the police and the information had to have been dispatched to Rhodes. Clearly, the accident occurred less than 10 minutes after Rhodes' observation of plaintiff's shoulder-riding.[4]

The totality of facts in this case distinguish it from those cases where prior acts of a driver have been excluded because they could have changed innumerable times within a short span of time and distance. (See, *e.g.*, *Flesberg v. Prince Warehouse Co.* (1962), 37 Ill. App. 2d 22, 184 N.E.2d 813 (crossing the center line); *Hanck v. Ruan Transport Corp.* (1954), 3 Ill. App. 2d 372, 122 N.E.2d 445 (same); see also, *e.g.*, *Eleopoulos*, 94 Ill. App. 3d at 600, 418 N.E.2d at 984-85 (driver distracted while looking for something in the glove compartment); *Cooper v. Cox* (1961), 31 Ill. App. 2d 51, 175 N.E.2d 651 (speed); *Rzeszewski v. Barth* (1944), 324 Ill. App. 345, 58 N.E.2d 269 (same).) The relevant time period in this case was sufficiently short to support the reasonable inference that plaintiff continued his shoulder riding, or at least his passing on the right, from the point of Rhodes' observations to the scene of the accident. The circuit court therefore erred in excluding Rhodes' testimony on the basis of remoteness.

Because Rhodes' testimony was central to defendants' theory of

---

[4]We recognize, as pointed out by the dissent, that the circuit court believed that Rhodes' observations were made 10 minutes prior to the accident and that, in responding to the court's expressions, defendants' counsel's statements could be interpreted to have adopted that belief. That conclusion, however, is belied by the record. The record reveals that Rhodes would have testified that she made her observations at approximately 7:15 a.m. and received the report of the accident at approximately 7:25 a.m. Thus, because we must look at the proposed evidence itself rather than a party's or the court's interpretation of it, we cannot conclude that a 10-minute interval occurred between the time of Rhodes' observations and the accident.

the case and could have affected the verdict or the apportionment of fault, its weight and value should have been determined by the jury. If the goal of the law of evidence is truly to "discern the true state of affairs underlying the dispute," then we are compelled to conclude that the circuit court acted unreasonably when it denied defendants the use of evidence critical to their theory of the case. Accordingly, we find that the circuit court abused its discretion in excluding the testimony. (See *In re Marriage of Pearson* (1992), 236 Ill. App. 3d 337, 349, 603 N.E.2d 720, 729 (stating that an abuse of discretion occurs "when no reasonable person would take the view adopted by the trial court"); *In re Application of Kane County Collector* (1985), 135 Ill. App. 3d 796, 805, 482 N.E.2d 161, 167 (describing abuse of discretion as being judicial action which is "arbitrary, fanciful or unreasonable").)[5] We therefore reverse the judgment of the circuit court and remand for a new trial. Because we reverse and remand on this issue, we need not address the other grounds for reversal raised by defendants.

The judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

McCORMICK, J., concurs.

JUSTICE SCARIANO, dissenting:

The majority reverse and remand this case for the reason that the trial judge ruled that "as a matter of law what [Sergeant Rhodes] observed ten minutes beforehand is not probative as being too remote as to what occurred at the time of this impact." (264 Ill. App. 3d at 617.) Federal Rule of Evidence 401, adopted by the Supreme Court and cited by the majority (Fed. R. Evid. 401), does not in any way change the long-established and well-defined rule of law that the determination as to whether evidence is relevant is within the sound discretion of the trial court and its decision is not to be overturned by a reviewing court absent an abuse thereof. *O'Brien v. Hertl* (1992), 238 Ill. App. 3d 217, 223, 606 N.E.2d 225, 230 ("The determination of relevancy of evidence is largely within the discretion of the trial

---

[5]It is interesting to note that the dissent is premised not upon the correctness of the circuit court's ruling, but rather on the need to be deferential to it. We believe, however, that our holding is appropriately deferential to the court's ruling which, having deprived the defense of its ability to present its theory of the case, cannot be permitted to stand.

court, and reversal of its decision is not warranted absent abuse of that discretion[]"); *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 392, 445 N.E.2d 485, 491 ("It is so fundamental as to need no citation of authority that admission of evidence is a matter largely within the discretion of the trial judge and reversal is not warranted in the absence of an abuse of that discretion[ ]"), *rev'd in part on other grounds* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228; accord *Galowich v. Beech Aircraft Corp.* (1991), 209 Ill. App. 3d 128, 135, 568 N.E.2d 46, 50; *Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 600, 418 N.E.2d 980, 985; *Brown v. Nale* (1969), 106 Ill. App. 2d 238, 245, 245 N.E.2d 9, 13; *cf. City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 554 N.E.2d 1381 (holding that it is within the discretion of the trial court to determine whether an expert's opinion is admissible which may not be interfered with unless the court abused its discretion).

Yet, despite acknowledging their awareness that the circuit judge's ruling on this evidentiary issue was within the sound discretion of the court to make and could therefore not be set aside unless that discretion was abused, the majority, it turns out, pay only lip service to that hoary rule of law, for they overlook the well-established definition of the term "abuse of discretion:"

> "In determining whether the circuit court abused its discretion, [the appellate] court should not decide whether it agrees with the circuit court's decision; but rather, should determine whether the circuit court 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.'" *Zurich Insurance Co. v. Raymark Industries, Inc.* (1991), 213 Ill. App. 3d 591, 594-95, 572 N.E.2d 1119, 1122, quoting *In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898.

A slightly different but equally well-recognized explanation of the "abuse of discretion" standard of review was offered by this court as well in *Schoon v. Hill* (1990), 207 Ill. App. 3d 601, 609, 566 N.E.2d 718, 724, where we said:

> "The role of [the appellate] court is not to substitute its judgment for that of the circuit court, or even to determine whether the circuit court exercised it discretion 'wisely.' [Citations.] Rather, our task is to determine if the circuit court abused its discretion; in the absence of an abuse of discretion, the decision of the circuit court in granting or denying a *** motion will not be disturbed on review."

Accord *Whitney v. Madden* (1948), 400 Ill. 185, 190, 78 N.E.2d 593, 596 ("[B]ut where the trial court has the power of judicial discretion and exercises it without abuse, and within the scope of the law, such

actions will not be disturbed by the reviewing courts[ ]"); *In re Marriage of Pearson* (1992), 236 Ill. App. 3d 337, 349, 603 N.E.2d 720, 729 ("An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court[ ]"); *Progress Printing Corp. v. Jane Byrne Political Committee* (1992), 235 Ill. App. 3d 292, 304, 601 N.E.2d 1055, 1064 ("[A] circuit court's decision on [a] question [concerning the relevancy of evidence] will be overruled [on appeal] only if it represents an obvious abuse of discretion); *Kirk v. Rosewell* (1992), 225 Ill. App. 3d 326, 329-30, 587 N.E.2d 1214, 1216 ("[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court[; i]f reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion[ ]"); *In re Application of Kane County Collector* (1985), 135 Ill. App. 3d 796, 805, 482 N.E.2d 161, 167 (describing abuse of discretion as being judicial action which is "arbitrary, fanciful or unreasonable").

I fail to apprehend, and the majority fail to apprise us, how their overruling the trial judge on this issue conforms to the formulae we are mandated to follow by the case law quoted above, which represents only a sample of the legion of authority on the subject. One can very well wonder also if the majority recognize that all of the cases they cite in support of their holding except one *uphold* the trial court's exercise of discretion. For instance, in *Eleopoulos*, the jury returned a verdict in favor of the defendant finding that he did not negligently cause an automobile accident wherein the plaintiff was injured. (*Eleopoulos*, 94 Ill. App. 3d at 596, 418 N.E.2d at 982.) On appeal, the plaintiff urged, *inter alia*, that the trial court erred in excluding the testimony of the passenger in the defendant's automobile who would have stated that a short time before the accident, the defendant took his eye off the road in order to help her look for an item in the glove compartment. (*Eleopoulos*, 94 Ill. App. 3d at 599-600, 418 N.E.2d at 984.) The appellate court disagreed, holding that the trial court properly excluded this testimony as the witness could not "connect this testimony to the relevant time frame." *Eleopoulos*, 94 Ill. App. 3d at 600, 418 N.E.2d at 985.

In *Hanck v. Ruan Transport Corp.* (1954), 3 Ill. App. 2d 372, 122 N.E.2d 445, the plaintiff brought an action against the defendant and its employee for negligently operating a gasoline tractor-trailer transport. After the jury found for the defendants, the plaintiff argued on appeal, *inter alia*, that the trial court improperly excluded the testimony of a witness for plaintiff who would have testified that he saw the defendants' truck cross the centerline just prior to the accident approximately 800 feet from the scene. (*Hanck*, 3 Ill. App. 2d at 381, 122 N.E.2d at 449.) The court rejected the plaintiff's

contention, holding that "[t]here is nothing in the testimony of the witness *** as offered which indicates that such testimony would show any observation of the manner in which the transport was being driven from the time the witness observed the same until the collision occurred." *Hanck*, 3 Ill. App. 2d at 381, 184 N.E.2d at 449-50.

Additionally, in all of the other cases mentioned by the majority, this court affirmed the trial court's exercise of its discretion with respect to evidence of a driver's conduct prior to an accident. (See, *e.g.*, *Wassman v. Ritchason* (1978), 63 Ill. App. 3d 770, 778, 380 N.E.2d 1022, 1028; *Brown*, 106 Ill. App. 2d at 245-46, 245 N.E.2d at 13; *Cooper v. Cox* (1961), 31 Ill. App. 2d 51, 58, 175 N.E.2d 651, 654.) Moreover, in the lone case the majority cite wherein the judge's determination was set aside, *Klavine*, the issue of remoteness involves a witness' determination that he was only approximately 600 yards from the scene of the accident, that he was able to see the plaintiff's vehicle for a distance of 300 yards, and that the vehicle was traveling at a speed of 20 to 25 miles per hour—all clearly amounting to a temporal span that could not even remotely approach the 10-minute difference we encounter in this case.

The majority's statement that the record does not support the trial judge's finding "that 10 minutes elapsed between the time of Rhodes' observations and the accident" (264 Ill. App. 3d at 620) is to be contrasted with the record itself:

"THE COURT[, after being asked to reconsider its exclusion of Rhodes's testimony as to plaintiff's earlier shoulder-riding, stated]: I have read your motion over the noon hour and the materials. What's not in there and what I've been informed of is that *her observations were made 10 minutes before the time of the occurrence.*

MR. VACALA [counsel for defendants]: Judge, and *the reason her observations were made 10 minutes before the time of the occurrence* was because it was bumper to bumper traffic from a stationary observation point where her unmarked police vehicle was stopped, and she will lay a foundation for that.

THE COURT: That is a matter of dispute. The testimony so far has been that the traffic was moving at a minimum, 30 miles per hour.

* * *

*What occurred 10 minutes before is too remote a time.*

MR. VACALA: Judge, I would once again respectfully submit *that the 10 minutes in time is quite distorted here in light of the traffic circumstances.* ***

* * *

THE COURT: *** *I'm just saying that I'm ruling as a matter of law that what [Sergeant Rhodes] observed 10 minutes beforehand is not probative as being too remote as to what occurred at the time of this impact.*" (Emphasis added.)

Consequently, *Klavine* is inapposite. Since the testimony offered by defendants in this case was considerably more remote than that proffered in *Klavine*, it cannot be said that under that decision the trial judge here abused his discretion in excluding it.

The majority, by focusing on what they characterize as my glossing over the "correctness of the circuit court's ruling" (264 Ill. App. 3d at 621 n.5), and chiding me for the deference I accord the judge, obviously turn the universally acknowledged meaning of abuse of discretion on its head and redefine it: if the appellate court disagrees with the result of the trial court's exercise of what is indisputably its discretion (never mind what the reasonable person might think), it must necessarily follow that the court was incorrect and therefore abused its discretion. Shades of bootstrapping!

Our United States Court of Appeals views "correctness" a bit more pragmatically, even if less elegantly:

"To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." (*Parts & Electric Motors, Inc. v. Sterling Electric, Inc.* (7th Cir. 1988), 866 F.2d 228, 233.)

If the majority's ruling displaces existing case authority that requires a finding that there be at least a *clear* appearance of an abuse of discretion (see, *e.g.*, *Progress Printing Corp.*, 235 Ill. App. 3d at 304, 601 N.E.2d at 1064), whatever its effect might be on one's olfactory receptors, before the exercise of that discretion may be set aside, we may very well ask why we need trial court judges at all. I therefore dissent.